UNITED STATES of America ex rel.
Alton CANNON, Petitioner,

v.

Harold J. SMITH, Superintendent, Attica
Correctional Facility, Attica, New
York, Respondent.

Civ. No. 1970–535.

United States District Court,
W. D. New York.

Feb. 20, 1975.

William H. Gardner, Buffalo, N. Y., and Frederick A. Provorny, New York City, for petitioner.

Louis J. Lefkowitz, Atty. Gen., of N. Y. (Bedros Odian, Buffalo, N. Y., of counsel), for respondent.

CURTIN, Chief Judge.

This matter was initially before the late Chief Judge John O. Henderson. Petitioner submitted a pro se application for a writ of habeas corpus, alleging that his 1969 conviction for first degree rape in Monroe County Court was unconstitutionally obtained. In 1972 Judge Henderson denied the petitioner's

application, without a hearing, on the merits. After timely notice was filed, an appeal was taken to the Second Circuit Court of Appeals.

In a decision and order of the Circuit Court, the matter was remanded for further proceedings. United States ex rel. Cannon v. Montanye, 486 F.2d 263 (2d Cir. 1973), cert. denied, 416 U.S. 962, 94 S.Ct. 1982, 40 L.Ed.2d 313 (1974). The panel held, pursuant to 28 U.S.C. § 2254(d)(3), that the record of the state court proceedings lacked development of essential material facts regarding the in-court identifications of the petitioner. 486 F.2d at 268. The district court was directed to conduct or supervise an evidentiary hearing on the issues of unnecessary suggestiveness of the lineup and the likelihood of misidentification. 486 F.2d at 268.

The appellate tribunal was particularly concerned by the victim's inability to observe the rapist at the time of the attack, save for a glimpse of a green shirt. At the lineup, four days after the offense was committed, Cannon was wearing a green shirt and was selected by the victim. The testimony in the state court proceedings, however, failed to reveal details of how the other men in the array were clothed.[1] Furthermore, Cannon had been directed to wear a green shirt when he was arrested in his hotel room on the day of the lineup. The possible constitutional infirmity of the procedure was characterized by Judge Feinberg as follows:

> If all were dressed in green the inference of undue suggestion would clearly fail. If one or two had on green shirts, the inference would weaken very considerably. . . . if the inference remained, it would acquire great importance . . . where the victim's "opportunity . . . to view the criminal at the time of the crime" was limited, . . . .
> 486 F.2d at 268.

On December 3, 1973 Judge John O. Henderson appointed William H. Gardner, Esq. to represent the petitioner and Frederick A. Provorny, Esq., the petitioner's appellate lawyer, was appointed co-counsel. Shortly thereafter, following Judge Henderson's decease, the matter came before me. At that point counsel for the petitioner commenced discovery proceedings to obtain matter deemed essential to prepare for the hearing. The bulk of the material sought, however, was either unavailable or not produced. After discovery reached an impasse, a hearing was scheduled and held in this court on July 12, 1974.

FINDINGS OF FACT

The only witness called by either party was William Mahoney, Chief of Detectives for the Monroe County Sheriff's Department in Rochester, New York. On September 5, 1968 Mahoney conducted the lineup in his capacity as a supervisor for the Rochester Police Department's Detective Bureau. Mahoney conducted numerous lineups during this period for the police department. Although he stated that he had reviewed his trial testimony, Mahoney claimed to have a vivid independent recollection of the 1968 lineup because of prior contacts he had had with Cannon.

According to Mahoney, Lieutenant George Reiss and Detective Daniel Funk were assisting him, and the complainant was present. In keeping with the practice then, the names and positions of the persons in the array were recorded, but no photographs were taken or descriptions noted. In response to questions from the State Attorney General, Mahoney testified as follows:

Q. They were all in civilian clothing?

A. That is correct.

Q. Does that include Alton Cannon?

A. Yes, sir.

---

1. " . . . one or two approximately the same in dress." Record on Appeal [hereinafter Record] at 111.

Q. All five people in the lineup had civilian clothing?

A. Yes, sir.

Q. Were the heights of the five individuals varying?

A. It would probably be easier, sir, if I explained that the persons in the lineup involved the selection of four other persons who were selected for race, height and weight similar to that of the subject, Alton Cannon. I would say that everybody in the lineup was within the same age group, early twenties, they were within an inch or so above or below the height of Alton Cannon, they were also within I would say approximately ten pounds of the individual, Alton Cannon, and they were selected from approximately forty or fifty people, young males, that were in the jail at the time. Also one of the four individuals selected for the lineup was wearing a green sweater similar, in fact, almost identical, to the one that Alton Cannon wore.

Federal hearing Tr. at 10, 11.

The only other significant direct testimony advanced by Mahoney concerned the manner in which the victim identified Cannon:

THE COURT: Tell us what the lady said, please.

THE WITNESS: I went back to the other side of the lineup to ask her if she could identify anybody in that lineup. She said, "Number 5." I said, "How do you know?" She said, "I can recognize him by his face." She said, "I would also like to see a profile of him." I returned to the other room on the other side

of the mirror and I had Cannon step forward. He showed her the right side of his face, the profile, and I returned him to the lineup, and went back and again spoke to Mrs. Ripple and asked her if she was sure of the same man. She said exactly, positively it was him. Tr. at 12.

Cross-examination considerably weakened Mahoney's testimony. Although he steadfastly maintained that the green shirts worn by Cannon and one of the other men in the lineup were identical he was short on specifics. Mahoney could not recall if the shirts had long or short sleeves, were cardigan or pullover, dull or shiny, thick or thin, crew neck or button down, were worn inside or outside the trousers, or even if they were light or dark green.[2] In addition, Mahoney's reportedly "vivid" recollection of the lineup was considerably clouded when he failed to establish which fellow officers were in fact present at the time. It was also apparent that Mahoney's "standard" lineup practices were a source of some of his detail, albeit unconsciously, considering the passage of six years since the event.[3]

At the conclusion of Mahoney's testimony the hearing came to an abrupt end. Neither the victim nor the other officers present at the lineup were called by the state to testify. Furthermore, the state did not indicate that these other witnesses were unavailable.

CONCLUSIONS OF LAW

On the basis of the testimony adduced at the hearing, the inference of damaging suggestibility at the petitioner's lineup was not dispelled. Detective Mahoney's testimony can only be character-

2. This is not surprising since Lieutenant George Reiss, the arresting officer, first explored the green shirt connection and directed Cannon to wear the shirt to police headquarters. Record at 216.

3. Mahoney's insistence that the victim identified Cannon's face is the best example of this phenomenon. At the initial Wade hearing and trial Mahoney never revealed this fact. Furthermore, the victim's testimony clearly establishes that she never saw her assailant's face.

ized as equivocal. But, an additional factor to be weighed against the state is the failure to produce critical witnesses to the events on the day of the lineup. The availability of the victim and the other officers in attendance at the lineup was not disputed. Under some circumstances, the state alone might not bear a burden for failing to produce them at the hearing. 2 Wigmore on Evidence, § 288 (3d Ed. 1940); United States v. Beekman, 155 F.2d 580 (2d Cir. 1946); United States v. Llamas, 280 F. 2d 392 (2d Cir. 1960).

■ Here, however, members of the investigative team were not called although they testified in the state trial concerning the precise matters sought to be developed with greater particularity in this hearing. Even the victim, the person whose testimony and identification contributed more to Cannon's conviction than anything else, was not called. Under these circumstances, I sense that the state's failure to call these witnesses, particularly the victim, when they have sided with the state in the past, indicates that their testimony would have been unfavorable to the state. United States v. Johnson, 467 F. 2d 804, at 809 (1st Cir. 1972), cert. denied, 410 U.S. 909, 93 S.Ct. 963, 35 L. Ed.2d 270 (1973); see also United States v. Cotter, 60 F.2d 689 (2d Cir. 1932).

■ What emerges from a synthesis of the record in the state court and the hearing before me is a conclusion that the lineup was impermissibly suggestive. Cannon was directed by the arresting officer to wear a distinctive green shirt because that was an important lead in the investigation. But none of the other lineup participants was asked to wear that particular shirt and at least three or four, if not all of the other men in the lineup, were not wearing shirts anything like Cannon's. See Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

At the time of the attack, the victim was unable to see the perpetrator's face. Her initial description to police officers was almost valueless.[4] In addition, the victim had been drinking just prior to the attack. Furthermore, the lineup in question did not occur until almost five days had passed. Under these circumstances, I am forced to conclude that the possibility of irreparable misidentification was so great that it was error to admit any testimony with regard to identification at all. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); United States ex rel. Bates v. Mancusi, 360 F.Supp. 1340 (W. D.N.Y.1973).

■ Finally, the admission of this identification testimony must be declared constitutionally harmful. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), because there was almost no other conclusive evidence introduced at the trial. This becomes more significant when corroboration requirements in effect at the time of the offense are considered.

Therefore, it is hereby ordered that the petitioner, Alton Cannon, is granted a writ of habeas corpus releasing him from custody unless the respondent commences proceedings within thirty days to afford the petitioner a new trial.

So ordered.

---

4. ". . . he had a green shirt on, dark pants and black shoes. He was a male negro. He was on the thin side." Record at 182.