UNITED STATES ex rel. Alton
CANNON, Appellee,

v.

Harold J. SMITH, Superintendent, Atti-
ca Correctional Facility, Attica, New
York, Appellant.

No. 77, Docket 75–2056.

United States Court of Appeals,
Second Circuit.

Argued Oct. 22, 1975.

Decided Dec. 18, 1975.

Melvin Bressler, Rochester, N. Y. (Jack
B. Lazarus, Dist. Atty. of Monroe Coun-
ty, N. Y., on the brief), for appellant.

Frederick A. Provorny, Washington, D.
C., for appellee.

Before MOORE, FEINBERG and
VAN GRAAFEILAND, Circuit Judges.

FEINBERG, Circuit Judge:

Two years ago, this court heard an
appeal by Alton Cannon, a prisoner in
state custody, from the denial by the
United States District Court for the
Western District of New York of his pe-
tition for a writ of habeas corpus. Can-
non attacked his state conviction of first
degree rape on a number of grounds, all
but one of which we rejected. *United
States ex rel. Cannon v. Montanye*, 486
F.2d 263 (1973), cert. denied sub nom.
*Cannon v. Smith*, 416 U.S. 962, 94 S.Ct.
1982, 40 L.Ed.2d 313 (1974).[1] The excep-

1. Cannon's petition for certiorari sought re-
view of the issues decided against him by this
court. The Attorney General of the State of
New York opposed the petition primarily on
the ground that the judgment was interlocuto-

ry because we had remanded on one issue, and
the other issues could be rendered moot if the
district court finally did issue the writ. Jus-
tices Douglas, Brennan and Marshall dissented
from the denial of certiorari.

tion was Cannon's claim that the victim's identifications of him at a lineup and later at trial were constitutionally tainted by an improper lineup. On that issue, we remanded the case to the district court for a further hearing on whether the lineup had been "so impermissibly ·suggestive as to give rise to a very substantial likelihood of irreparable misidentification." See *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). The reasons for the remand, as will be explained further below, were that neither the state trial court nor the federal district court had considered one aspect of appellant's lineup claim and the record on that "significant factual question" was, therefore, "sparse." 486 F.2d at 268. Our decision to remand was unanimous, although Judge Friendly, dissenting in part, would' have granted the writ in any event because of another alleged error of constitutional proportions in the conduct of the state trial.[2]

Upon remand, Chief Judge John T. Curtin held an evidentiary hearing and concluded that "the possibility of irreparable misidentification was so great that it was error to admit [at the state trial] any testimony with regard to identification at all." 388 F.Supp. 1201, at 1204. The judge granted the writ, releasing Cannon from custody "unless the respondent commences proceedings within thirty days to afford the petitioner a new trial." Id.[3] Respondent Harold J. Smith, Superintendent of Attica Correctional Facility appeals.[4] For reasons set forth below, we affirm the judgment of the district court.

I

Familiarity with our prior opinion will be assumed, and we will state the essen-

tial facts very briefly. Almost five days after the crime had been committed, the victim identified Cannon in a lineup with four other males of similar race and size. When picked up in his hotel room earlier that day, Cannon had been directed to put on a green sweater or shirt. This was significant because the police knew that the victim's initial description was "almost valueless," except that she had gotten "a glimpse of a green shirt." 388 F.Supp. at 1202, 1204. On the prior appeal, what most troubled this court about the identification was the dress of the other men in the lineup. Citing, inter alia, *Foster v. California*, 394 U.S. 440, 443, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), we pointed out that the method used to identify Cannon might well have been unduly suggestive, particularly in view of the possible "police complicity in arranging an unfair lineup." 486 F.2d at 267. Noting that the record of the state *Wade* hearing did not indicate the color of the clothes worn by the other men in the lineup, we said:

> If all were dressed in green the inference of undue suggestion would clearly fail. If one or two had on green shirts, the inference would weaken very considerably. On the other hand, if the inference remained, it would acquire great importance in a case where the victim's "opportunity . . . to view the criminal at the time of the crime" was limited.

486 F.2d at 268. Since the significance of the green shirt had not been explored, we declined "to decide the ultimate issue of taint." Id. Instead, we remanded to the district court to conduct a *Wade* hearing itself, "taking into account the factors which we have cited," or to hold the case while the state court did so.

2. Judge Friendly characterized this as "the rare state prisoner habeas appeal where there is reasonable doubt whether petitioner committed the crime." 486 F.2d at 268. Judge Lumbard, also a member of the earlier panel, later agreed that this was the "rare" case where "a claim of innocence could be seriously advanced." *Ralls v. Manson*, 503 F.2d 491, 494 & n. 1 (2d Cir. 1974) (concurring opinion).

3. By then, Cannon had served some six years of his original sentence of six years and eight

months to 20 years. The state raised no objection to Cannon's release pending this appeal.

4. Although the Attorney General represented respondent on the prior appeal and in the remand proceedings before Judge Curtin, on this appeal respondent is represented by the District Attorney of Monroe County.

Upon remand, the district court followed the former course. At the hearing, the only witness offered by the state was William Mahoney, Chief of Detectives for the Monroe County Sheriff's Department in Rochester, New York. In 1968, Mahoney had conducted the challenged lineup with the assistance of then Lieutenant George Reiss and Detective Daniel Funk. There were no other witnesses for the state, although Reiss and Funk were still in the employ of the Rochester Police Department and there was no indication that either was unavailable. Cannon produced no witnesses.

In his direct testimony, Mahoney stated that one of the four men in the lineup with Cannon "was wearing a green sweater similar, in fact, almost identical," to the one Cannon had on. However, as Judge Curtin put it: "Cross-examination considerably weakened Mahoney's testimony." 388 F.Supp. at 1203. The judge obviously did not believe Mahoney, stating that his testimony "can only be characterized as equivocal," and that "at least three or four, if not all of the other men in the lineup, were not wearing shirts anything like Cannon's." 388 F.Supp. at 1203–04. The judge also noted that the state's failure to call other available witnesses "when they have sided with the state in the past, indicates that their testimony would have been unfavorable."[5] Id. From the record in the state court and the hearing before him, Judge Curtin found that the lineup was impermissibly suggestive. Pointing out that "the victim was unable to see the perpetrator's face, that her initial description to the police was of no real value,[6] and that the lineup was not held "until almost five days had passed," the judge felt

forced to conclude that the possibility of irreparable misidentification was so great that it was error to admit any

testimony with regard to identification at all.

Id. Finally, the judge concluded that the error was "constitutionally harmful" because "there was almost no other conclusive evidence introduced at the trial." Id.

II

■ On this record of careful findings by a conscientious judge after a remand for just that purpose, appellant Superintendent has a particularly heavy burden to overcome. We conclude that he has not done so; though appellant offers a number of arguments, we find them unpersuasive. Appellant says that the hearing on remand was a continuation of the state Wade hearing and that once all the testimony was in, Judge Curtin should have given more weight to the conclusion of the state trial judge and the trial jury that Mahoney was a credible witness. He also argues that Mahoney's testimony was not ambiguous or equivocal. But Judge Curtin, as the trier of fact, was free to disbelieve Mahoney, whether or not the state trial judge would have reacted the same way. Appellant argues that our remand "somewhat narrowed the normal scope of discretion" in the district court.[7] This is incorrect. Our remand obviously contemplated that the district court could hear further evidence and decide the still unresolved factual and legal issues either way, so long as conflicting inferences were fairly available. Perhaps what appellant really means is that on the record as it now stands Judge Curtin could decide the issues only one way as a matter of law. But this is clearly not so. Mahoney's testimony, if not credited on the key issue, or even if credited only in part, allowed the inferences that the police had made Cannon put on a green shirt and that this unfairly led to a misidentification.

---

5. One of the uncalled witnesses, Lt. Reiss, had been the officer who directed Cannon to put on a green shirt.

6. ". . . he had a green shirt on, dark pants and black shoes. He was a male negro. He was on the thin side."

7. Appellant's Brief, at 9.

■ Appellant also maintains that the victim had an independent basis for her in-court identification, which neither the state court nor Judge Curtin apparently considered. On the evidence, the existence of such an independent basis was unlikely. More important, on this record it would not cure the error in allowing evidence at trial of the unfair lineup identification.

■ Appellant also contends that the judge improperly shifted to the state the burden of persuasion in the habeas proceeding by inferring that various uncalled witnesses would testify unfavorably to its position and by not requiring Cannon to call witnesses. The argument is unsound. Certainly, the state's failure to call Reiss and Funk, both of whom had been present at the lineup and were still in the state's employ, allowed the trier of fact to infer that their testimony would be unfavorable.[8] This is particularly so when the trier of fact gives notice, as Judge Curtin did here, that he might draw the inference because of the failure to produce such a witness.[9] Moreover, even if the inference had been unavailable, the judge was entitled on this record to find, as he did, that apart from Cannon no more than one, possibly not even one, person in the lineup wore a green shirt. In our prior opinion, we pointed out that an inference of "undue suggestion" would then still be permissible, which "would acquire great importance." 486 F.2d at 268. Finally, Judge Curtin did not improperly shift the burden of persuasion. That Cannon produced no witnesses at the hearing is of no moment, for by the time the case came to Judge Curtin on remand, Cannon had made out a sufficient case to allow granting the writ. The evidence before Judge Curtin did not compel a contrary conclusion.

■ In sum, we find that Judge Curtin committed no error. At least one of us in the position of the district judge on remand might have followed this court's earlier suggestion to let the state court conduct the further hearing or might not have decided the case in the same way as Judge Curtin did but that is not the issue. The question is whether the judge made any clearly erroneous findings of fact or incorrect conclusions of law. Finding the answer in the negative, we affirm the judgment of the district court.

MOORE, Circuit Judge (dissenting):

I take strong exception to the conclusion reached by the majority.

Appellant Cannon, after pre-trial *Huntley* and *Wade* hearings in the state court (New York Supreme Court), which determined the propriety of Cannon's oral confession and the victim's identification of him at a line-up, respectively, was convicted by a state court jury of first degree rape. After his conviction, further proceedings were ordered by the Appellate Division of the New York Supreme Court to determine whether Cannon had waived his right to counsel at the line-up.[1] Waiver having been found,[2] the Appellate Division affirmed his conviction,[3] and review was denied by the Court of Appeals. Thereafter, Cannon twice petitioned the United States District Court for the Western District of New York for habeas corpus relief. Each of these petitions was denied by a federal district judge. Cannon then appealed from those orders. This Court

---

8. *United States v. Beekman*, 155 F.2d 580, 584 (2d Cir. 1946). Cf. *United States v. Ploof*, 464 F.2d 116, 119 (2d Cir.), cert. denied sub nom. *Godin v. United States*, 409 U.S. 952, 93 S.Ct. 298, 34 L.Ed.2d 224 (1972); *United States v. Crisona*, 416 F.2d 107, 118 (2d Cir. 1969), cert. denied sub nom. *Delyra v. U. S.*, 397 U.S. 961, 90 S.Ct. 991, 25 L.Ed.2d 253 (1970). See generally McCormick, Evidence § 272, at 656–59 (2d ed. 1973); 2 Wigmore, Evidence §§ 285–88 (3d ed. 1940).

9. A third potential witness, Detective McDonald, had been at the lineup "part of the time," and was apparently available, although retired.

1. *People v. Cannon*, 33 A.D.2d 641, 305 N.Y. S.2d 106 (4th Dept. 1969).

2. *People v. Cannon*, 61 Misc.2d 171, 305 N.Y. S.2d 108 (Monroe County Ct.1969).

3. *People v. Cannon*, 33 A.D.2d 1104, 309 N.Y. S.2d 894 (4th Dept. 1970).

rejected his challenge to the prosecutor's reference, at trial, to certain typewritten confessions made by Cannon; the issue of suggestiveness of the line-up was remanded to the District Court to determine whether any of the line-up participants, aside from Cannon, were dressed in green shirts.[4]

More than six years after the termination of the trial proceeding which resulted in Cannon's conviction—and almost six and a half years after the original line-up was held—the district judge decided that the line-up had been impermissibly suggestive and that there had been no independent basis for Cannon's identification at trial. This finding flies in the face of all the judicial determinations which preceded it. Two aspects of the district court's action, and the sanction which it finds here, warrant comment. They are: disregard for the earlier state proceedings; and an equivalent disregard for the jury verdict, which demonstrated the jury's acceptance of the prosecutor's theory establishing an independent basis for identification of Cannon as Mrs. Rippel's assailant.

The discussion which follows focuses on the first mentioned factor, because it is the disregard of legitimate and proper state proceedings which I find most disturbing in this case.

### I.

The state court considered the issue of taint when it conducted its pre-trial *Wade* hearing six years ago. After hearing testimony from the victim and from Mahoney, the trial judge upheld the identification of Cannon made by Mrs. Rippel at the line-up. Cannon's later conviction was affirmed by the Appellate Division and review was denied by the New York Court of Appeals. Both of these appellate courts permitted the conviction to stand on the basis of the trial record which included the *Wade* findings. There is no suggestion that the proceedings in the state courts were irregular, or conducted in bad faith.

There is similarly no suggestion that the trial judge abused his discretion or made clearly erroneous findings at the *Wade* hearing. This Court's comment, when it remanded Cannon's petition to the district court, was that further proceedings were necessary because the record below, insofar as the *Wade* determination was concerned, struck this Court as ambiguous.

Upon remand the district court in effect, proceeded *de novo* and ignoring all of the state court proceedings—including the conclusions of the state trial judge who considered testimony taken within four months after the crime occurred—the district court granted Cannon's petition based upon the district judge's disinclination to believe Detective Mahoney's testimony that at least one other line-up participant was wearing a shirt similar to Cannon's. This was not due to any substantial inconsistencies between the earlier and later testimony elicited from Mahoney; instead, it would appear that Mahoney simply failed to strike the district judge as a credible witness.

It should be emphasized, first, that Mahoney's original testimony at the *Wade* hearing and at trial was accepted by judge and jury. Second, Mahoney's recent appearance on the witness stand in federal court occurred more than six years after his original state court testimony. In this light, I find unjustified the district court's explanation for its disbelief of Mahoney's testimony by pointing to his reliance on regular police procedures when he attempted to reconstruct the line-up, and by referring to his cloudy memory respecting detail. 388 F.Supp. at 1203.

Similarly, the district court's adoption of a "presumption" that certain individuals not produced as witnesses by the Government would have testified unfavorably to the Government's cause, disregards the trial record in this case. Only two witnesses were heard at the original *Wade* hearing: Mahoney, and Mrs. Rippel. Since Mrs. Rippel's testimony at

---

4. *United States ex rel. Cannon v. Montanye*, 486 F.2d 263 (2d Cir. 1973).

that hearing revealed that she could not remember the particulars of dress respecting the other line-up participants,[5] the state court necessarily relied upon Mahoney insofar as the description of the participants' clothing was concerned. None of the several state tribunals which subsequently examined Cannon's conviction put the state on any kind of notice that—*notwithstanding* the trial judge's satisfaction with the evidence given at the *Wade* hearing—the state had in fact been remiss in failing to produce other witnesses, presumably for the purpose of corroborating Mahoney. To conclude, six years after the fact, that the state should have divined the proclivities of the federal court respecting proper *Wade* evidence is entirely unreasonable. The district court apparently did not look closely at the earlier record, in view of its evident puzzlement at the state's failure to call either the victim[6] or other individuals who "have sided with the state in the past."[7] 388 F.Supp. at 1204. Yet that court decided to overturn an entire chain of decisions affirming Cannon's conviction on the basis of the district court's own "synthesis" of the case record and the hearing upon remand, at which Mahoney substantially corroborated his own testimony given six years before and adopted by the state court.

The overturning of a conviction which is collaterally attacked by a defendant is not to be lightly undertaken. This Court has specifically acknowledged the Supreme Court's admonition in *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), with respect to the presumed regularity of judgments.

> It is hornbook law that a collateral attack on a criminal conviction must overcome the threshold hurdle that the challenged judgment carries with it a presumption of regularity . . . and that the burden of proof is on the party seeking relief. *Williams v. United States*, 481 F.2d 339, 346 (2d Cir.) *cert. denied*, 414 U.S. 1010, 94 S.Ct. 373, 38 L.Ed.2d 248 (1973).

In this case the presumption was particularly strong in view of the number of judges who successively had the record of the case before them, and who uniformly rejected Cannon's challenges to the judgment of conviction entered against him. Cannon can scarcely be said to have overcome the presumption and shouldered his burden by virtue of the district court's skeptical views about one of the *state's* witnesses.

Habeas corpus relief is an extraordinary remedy for extraordinary deprivation of rights. Cannon received a full measure of due process in the state courts, and does not by any stretch of the imagination come before this Court deprived of his rights or of a fair hearing before a disinterested forum. Nor is this an instance in which an innocent man is battling to secure a just determination in his case. Cannon made several confessions to police officials; certain of these were admissible against him at trial, and they unmistakably supported the charges of first degree rape brought against him. Cannon was properly convicted after pre-trial and trial proceedings that were procedurally and substantively fair and impartially conducted. His post-trial efforts collaterally to attack the judgment of conviction strike me as so much jousting with the judicial process. Judge Learned Hand's apt comment in this regard might well be heeded:

> Justice is not a game; there is no constitutional right to "throw dust in a juryman's eyes, or hoodwink a judge who is not overwise". *United States*

---

5. Tr. at 108.

6. As already mentioned, *supra* at n. 5, the victim would not in fact have been helpful.

7. How exactly these individuals sided with the State on the issue of the line-up is not clear. Neither Lieutenant Reiss nor Detective Funk had testified at the original *Wade* hearing. Although both men gave testimony at Cannon's trial, none of it related to the line-up. Tr. pp. 201–221, 243–265. Detective McDonald, whose presence at the line-up was noted by Mahoney, Proceedings of July 12, 1974, Tr. pp. 35–36, had never been a witness in the case at all.

*v. Paglia,* 190 F.2d 445, 447–8 (2d Cir. 1951).

This Court should no more bow to Cannon's gamesmanship than it should sanction the district court's action rejecting the earlier state court proceedings as so much *obiter dicta.* By doing both, the Court capitulates to a claim for due process that is as unpersuasive as it is disingenuous.

## II.

The remaining ground for my exception to the majority's opinion may be briefly stated.

The theory of the case, as presented by the prosecution at trial, was that Mrs. Rippel, while walking home alone, was followed for some distance by a man who, after appearing and disappearing several times, finally grabbed her from behind and raped her. Mrs. Rippel had the opportunity to observe the face and figure of the man who was following her; she did not have the opportunity to observe her assailant from the time she was actually seized from behind. The inference which the jury was asked to draw, and which they did draw, was that the man who followed Mrs. Rippel and the man who raped her were one and the same. Her observations of her assailant prior to the attack formed a sufficient basis for independent identification at trial. With the benefit of 20/20 hindsight, one might criticize the state for failing to exploit that basis to its fullest extent at trial, and instead relying more heavily on a line-up identification which, we are now informed, was impermissibly suggestive. However that may be, the testimony at trial demonstrates that an independent basis was shown. By holding to the contrary, this Court has in effect abrogated the fact-finding function of the jury and replaced the jury's determination with its own.

If the majority opinion is to prevail, then our federal judicial system might consider one of two procedures to expedite the processing of criminal cases and to avoid needless expenditure of judicial time: abolish by federal court decree state forums for the trial of serious criminal offenses; or, alternatively, grant to every such defendant convicted in a state tribunal a trial *de novo* in the federal courts. Where, as here, the state procedures for the protection of a defendant's rights have been meticulously followed, I cannot justify federal intrusion under the facts and circumstances set before us in this case.

I would reverse the district court's decision and deny the writ.