Eugene LAGANA, Petitioner,

v.

Eugene LeFEVRE, Warden of Clinton Prison at Dannemora, New York, Respondent.

No. 76 C 2066.

United States District Court, D. New York.

June 27, 1979.

Evseroff & Sonnenshine, Brooklyn, N. Y., Jeffrey A. Rabin, Brooklyn, N. Y., of counsel, for petitioner.

Robert Abrams, Atty. Gen. of the State of New York, Burton Herman, Asst. Atty. Gen., New York City, for respondent.

## DECISION AND ORDER

BRAMWELL, District Judge.

In the late winter of 1973, Mr. Eugene Lagana was tried by a jury in New York Supreme Court, County of Kings, and, on February 2, 1973, he was convicted of Manslaughter in the first degree. On appeal, the Appellate Division, Second Department found that the circumstantial evidence was insufficient to sustain Mr. Lagana's conviction, and, relying on prior case law, the Court found it error to admit the identification testimony of Detective O'Brien. Accordingly, the Court unanimously reversed Mr. Lagana's conviction. *See People of the State of N. Y. v. Lagana*, 43 A.D.2d 834, 350 N.Y.S.2d 747 (2d Dept. 1974). The New York Court of Appeals, however, did not agree. Rather, that Court found that section 60.25 of the Criminal Procedure Law superseded prior case law and, accordingly, Detective O'Brien's testimony was admissible pursuant to it. The Court also implied that the circumstantial evidence was sufficient and, therefore, the matter was reversed and remitted to the Appellate Division, Second Department. *See People v. Lagana*, 36 N.Y.2d 71, 324 N.E.2d 534, 365 N.Y.S.2d 147 (1975).

On remittitur, the Appellate Division unanimously affirmed Mr. Lagana's conviction without opinion. *See People v. Lagana*, 48 A.D.2d 870, 372 N.Y.S.2d 566 (2d Dept. 1975). Thereafter, Mr. Lagana sought leave to appeal to the New York Court of Appeals, but leave was denied. To complete his journey through the judicial system, Mr. Lagana applied for a writ of certiorari to the United States Supreme

Court. However, this, too, was denied. *Lagana v. State of New York*, 424 U.S. 942, 96 S.Ct. 1409, 47 L.Ed.2d 348 (1976). Having thus unsuccessfully traveled all of the remedial avenues provided to him by New York State, Mr. Lagana grasped the opportunity set forth in 28 U.S.C. § 2254 (1970) to seek redress in the federal courts.

By way of a petition filed in this Court, Mr. Lagana approaches this bench for the issuance of a writ of habeas corpus pursuant to the above cited statute. In doing so, he argues that such extraordinary relief is warranted as he was denied the due process of law guaranteed to him by the Fifth Amendment [1] when the state court admitted evidence which, he claims, was founded upon an impermissibly suggestive lineup. In order to more fully understand the nature of Mr. Lagana's claim, however, an examination of its factual underpinnings must be initially undertaken.

The facts giving rise to the underlying charge of murder stretch back in time to the summer of 1970. Late in the evening of August 2, 1970, Joey Pendolino was on a sidewalk in front of a Brooklyn nightclub, at which time he was fatally shot. From the trial testimony, it appears that the jury found that Mr. Lagana and Mr. Pendolino were involved in an altercation inside the nightclub shortly before the shooting. During this altercation, Mr. Lagana's face was cut. In accordance with their finding of guilt, it appears the jury found that Mr. Lagana left the club after the altercation, returned to it a short time later and proceeded to shoot Mr. Pendolino. There were no eye witnesses to the street shooting who could identify the culprit. The jury also apparently found that, after this incident, Mr. Lagana fled in his automobile and tossed the gun into the street a short distance from the scene of the crime.[2] Some-

time later, Mr. Lagana was found by the police quite some distance from the club under a parked car. Since he was semiconscious and bleeding, he was taken to the hospital by the police.

According to the testimony given at the suppression hearing, Ms. Margaret Zaccario was in the company of the deceased in the boutique area of the club on the night of the crime. Ms. Zaccario testified that, while she and Mr. Pendolino were in this area, a man who she did not know approached them, "had words" with Mr. Pendolino, and, thereafter, a fight ensued between the man and the deceased. According to Ms. Zaccario, she only observed Mr. Pendolino's adversary for a "split second." When the fight started, Ms. Zaccario testified she ducked into a telephone booth, and, a short time later, she saw a man with blood on his face walk by the booth.

A few hours later, Ms. Zaccario was taken by the police to the hospital where Mr. Lagana was being treated. According to her testimony, while on route to the hospital, she was told by the police that the purpose of the hospital visit was so that she could identify the person who fought with the deceased in the nightclub. Ms. Zaccario testified that, upon arriving at the hospital, she was taken to a ward which was guarded by police officers and occupied by approximately six patients. She testified that she walked the length of the room and then returned to the doorway. Ms. Zaccario then testified that she thought she identified the man in the second bed, Mr. Lagana, as the culprit, but added that she did so because the police told her he had been involved in the fight. Mr. Lagana was the only patient in the ward with a bandaged face.

At the suppression hearing, Ms. Zaccario could not identify Mr. Lagana as either the

---

1. Since Mr. Lagana's claim for section 2254 relief is firmly rooted in the Fifth Amendment rather than the Fourth Amendment, the Supreme Court's ruling in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), has no application to the instant matter.

2. With respect to the gun later retrieved by the police, no fingerprints implicating Mr. Lagana were found on this pistol. It further appears that, while the pistol was the type of weapon which used the variety of bullets which were found lodged in Mr. Pendolino's body, there was no evidence tying the retrieved gun to the bullets so lodged.

man involved in the dispute with Mr. Pendolino or the man whom she saw from the telephone booth departing the club with a bloodied face. Further, Ms. Zaccario could not testify that Mr. Lagana was the man she identified in the hospital, nor could she testify that the man involved in the fight and the man with the injured face who passed in front of the telephone booth were the same person. Her lapse of memory was ascribed to the two and one-half year interval between the shooting and Mr. Lagana's trial.

New York City Police Detective Warren O'Brien testified at the suppression hearing that he accompanied Ms. Zaccario to the hospital for the identification procedure. Detective O'Brien testified that Ms. Zaccario identified the petitioner at that time. Contrary to Ms. Zaccario's testimony, however, Detective O'Brien stated that the police made no suggestions to Ms. Zaccario as to whom to identify. He added that he had never seen Mr. Lagana prior to the hospital confrontation and, at the time of the confrontation, did not know which patient was the suspect.

On the basis of Ms. Zaccario's and Detective O'Brien's testimony, and despite the acknowledged fact that the petitioner was the only patient in the ward with a bandaged face, the state trial judge denied Mr. Lagana's motion to suppress and held that, pursuant to section 60.25 of the New York Criminal Procedure Law,[3] Detective O'Brien could testify as to Ms. Zaccario's hospital identification of Mr. Lagana at Mr. Lagana's trial.

At Mr. Lagana's trial, Ms. Zaccario again could not identify Mr. Lagana. She augmented her suppression hearing testimony by adding she had only seen the bloodied man from the telephone booth for a "split second." Furthermore, she clarified her observation ability by testifying that the lighting in the club boutique area was "very dim" and the lighting in the telephone booth area was "very dark." Ms. Zaccario further testified she could not see the man's face at the hospital because it was obscured by bandages. Detective O'Brien's testimony at trial revealed that, while on the way to the hospital, he told Ms. Zaccario the suspect had been cut, but added that Ms. Zaccario had previously informed him of this same fact. As has been noted, the jury concluded that Mr. Lagana was the person who shot Mr. Pendolino and, accordingly, found him guilty of first degree Manslaughter.

In his instant quest for habeas corpus relief, Mr. Lagana argues that Ms. Zaccario's identification of him at the hospital was impermissibly suggestive and, therefore, was a violation of due process. Because of this constitutional violation, Mr. Lagana contends Detective O'Brien's testimony based on Ms. Zaccario's hospital identifica-

---

3. Section 60.25 of the New York Criminal Procedure Law, as in effect at the time of Mr. Lagana's trial, provided:

1. In any criminal proceeding in which the defendant's commission of an offense is in issue, testimony as provided in subdivision two may be given by a witness when:

(a) Such witness testifies that:

(i) He observed the person claimed by the people to be the defendant either at the time and place of the commission of the offense or upon some other occasion relevant to the case; and

(ii) On a subsequent occasion, but prior to the criminal proceeding, he observed, under circumstances consistent with such rights as an accused person may derive under the constitution of this state or of the United States, a person whom he recognized as the same person whom he had observed on the first or incriminating occasion; and

(iii) He is unable at the proceeding to state, on the basis of present recollection, whether or not the defendant is the person in question; and

(b) It is established that the defendant is in fact the person whom the witness observed and recognized on the second occasion. Such fact may be established by testimony of another person or persons to whom the witness promptly declared his recognition on such occasion.

2. Under circumstances prescribed in subdivision one, such witness may testify at the criminal proceeding that the person whom he observed and recognized on the second occasion is the same person whom he observed on the first or incriminating occasion. Such testimony, together with the evidence that the defendant is in fact the person whom the witness observed and recognized on the second occasion, constitutes evidence in chief.

tion should not have been admitted into evidence as said identification was not made "under circumstances consistent with such rights as an accused person may derive under the constitution . . . of the Untied States." N.Y.Crim.Proc.Law § 60.-25(1)(a)(ii) (McKinney 1970).

■ Turning to the relevant law regarding this issue, at the outset mention must be made of what is not in issue in this case. First, the validity of section 60.25 of the Criminal Procedure Law is not an issue herein. Similarly, the admissibility of Detective O'Brien's testimony pursuant to this section is also not the real issue at hand. Rather, the disposition of the instant matter turns on the answer to the question of whether the basis for Detective O'Brien's testimony was

> so unnecessarily suggestive and conducive to irreparable mistaken identification that [the petitioner] was denied due process of law.

*Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).[4]

In the seminal *Stovall* decision, the Supreme Court found that

> a claimed violation of Due Process of law depends on the totality of the circumstances surrounding it.

*Id.* at 302, 87 S.Ct. at 1972. In *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Supreme Court was confronted with the standard to be applied to photographic identifications claimed to violate due process. The *Simmons* Court concluded that in-court testimony predicated upon a photographic identification was not to be admitted when the underlying photo display

was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Id.* at 384, 88 S.Ct. at 971.

Four years later in *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court was posed with the related question of the standard to be applied in determining whether an out-of-court identification procedure passes constitutional muster. The *Biggers* Court essentially found that the *Simmons* standard adequately served as the standard for the admissibility of evidence concerning an out-of-court identification. Notably, however, the *Biggers* Court deleted the word "irreparable" from the *Simmons* case in enunciating the criteria to be followed. *Id.* at 198, 93 S.Ct. at 381. The Court went on to hold, however, that a suggestive identification procedure, by itself, does not violate due process. *Id.* Rather, the critically dispositive factor is the likelihood of misidentification. *Id.* Refining this conclusion, the *Biggers* Court went on to enumerate the factors to be considered in determining whether the suggestive procedure was cast in the shadow of the likelihood of misidentification as

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* at 199, 93 S.Ct. at 382.

*Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), confirmed

---

**4.** The respondents, however, impliedly assert that such an inquiry has been foreclosed by virtue of the denial of Mr. Lagana's petition for a writ of certiorari by the United States Supreme Court. Contrary to the argument advanced by the respondents, it is clear that a denial of certiorari is not to be construed as the Supreme Court's expression of opinion on the merits of the case. *Brown v. Allen*, 344 U.S. 443, 489, 73 S.Ct. 397, 437, 97 L.Ed. 469 (1953) (Frankfurter, J.). Rather, questions rejected for consideration· by such denials of certiorari on a criminal defendant's direct appeal are,

indeed, open to review in habeas corpus proceedings. *United States ex rel. Epton v. Nenna*, 318 F.Supp. 899 (S.D.N.Y.1970), *aff'd*, 446 F.2d 363 (2d Cir.), *cert. denied*, 404 U.S. 948, 92 S.Ct. 282, 30 L.Ed.2d 265 (1971). Also worthy of mention at this juncture are Justice Hughes' remarks in *Bowen v. Johnson*, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455 (1939):

> It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired.

*Id.* at 26, 59 S.Ct. at 446.

the *Stovall* "totality of circumstances" test, holding that evidence derived from a suggestive pre-trial identification procedure was not barred *per se*. Instead, the Court found that "reliability is the linchpin in determining the admissibility of the identification testimony . . . ." *Id.* at 114, 97 S.Ct. at 2253. The Court further held that the *Biggers* factors were to be applied in determining the testimony's reliability. *Id. See United States v. Bubar*, 567 F.2d 192 (2d Cir. 1977); *United States v. Marchand*, 564 F.2d 983 (2d Cir. 1977).

Thus, to determine whether the identification procedure used in the instant case denied petitioner due process of law, this Court must employ a two-step test. *See United States v. Casscles*, 489 F.2d 20 (2d Cir.), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1973). The first step this Court must take is to determine whether or not the identification procedure at issue was impermissibly suggestive. If it was not, then this Court need go no further as Mr. Lagana's due process rights have not been transgressed. If, however, the hospital identification procedure is found to have been impermissible, the Court must then determine whether such a procedure resulted in a reliable identification, notwithstanding its color of impermissibility.

Turning to the first tier of this analysis, the procedure employed in the matter at bar lies somewhere between a formal lineup and a showup. Because Ms. Zaccario identified Mr. Lagana by picking him out from a group of "participants", however, this Court deems those cases concerning impermissible lineups to be more closely analogous to the challenged procedure than those cases involving showups.

Research into the legal arena concerned with lineup procedures reveals that there is no requirement that lineup participants be nearly identical in appearance to the accused. *See United States v. Reid*, 517 F.2d 953 (2d Cir. 1975). The fact that the accused may be shorter than the other lineup participants, *United States ex rel. Pella v. Reid*, 527 F.2d 380 (2d Cir. 1975), may be the only participant with a large nose, *United States v. Barron*, 575 F.2d 752 (9th Cir. 1978), may be dressed in a manner similar to the description of the culprit, *United States v. Medina*, 552 F.2d 181 (7th Cir.), *cert. denied*, 434 U.S. 839, 98 S.Ct. 132, 54 L.Ed.2d 182 (1977), or may be the only participant with a bush hair style, *United States v. Jackson*, 509 F.2d 499 (D.C.Cir. 1974), does not transpose the lineup proceeding into an impermissibly suggestive one. *See also United States v. Alden*, 576 F.2d 772 (8th Cir.), *cert. denied*, 439 U.S. 855, 99 S.Ct. 167, 58 L.Ed.2d 161 (1978); *United States v. Porter*, 430 F.Supp. 208 (W.D.N.Y.1977); *Warner v. Howard*, 416 F.Supp. 754 (M.D.Pa.1976).

On the other hand, where the accused is placed in such a position that he obviously stands out from the other lineup participants, courts have consistently characterized such a procedure as impermissibly suggestive. Specifically, in *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the witness viewed the defendant on three occasions. The first time, the defendant was in a lineup and was the only participant wearing the clothing that was included in the witness' description. The second occasion was a showup where the witness viewed only the defendant. The third occasion was another lineup in which the defendant was the only person present who had appeared in the first lineup. During this third confrontation, an identification was made. The Supreme Court found these identification procedures to be impermissibly suggestive.

In *United States ex rel. Cannon v. Smith*, 527 F.2d 702 (2d Cir. 1975), the issue of the constitutionality of a lineup was presented to the Second Circuit by way of a petition for a writ of habeas corpus. There, the victim's description of her assailant was vague, but for the fact that he wore a green shirt. At the lineup, the petitioner was forced to wear a green shirt although at least three or four of the other participants were not wearing green shirts. Such an identification procedure was found to be impermissibly suggestive, and the district court's issuance of a writ of habeas corpus was affirmed. *Id.* at 703.

The Second Circuit also found the identification impermissibly suggestive when it was made at a pretrial hearing where the defendant was the only black male and the only defendant in the courtroom. *Boyd v. Henderson*, 555 F.2d 56 (2d Cir.), *cert. denied*, 434 U.S. 927, 98 S.Ct. 410, 54 L.Ed.2d 286 (1977). Similarly, in *Roe v. People of the State of New York*, 363 F.Supp. 788 (W.D.N.Y.1973), *aff'd*, 495 F.2d 764 (2d Cir. 1974), the identification procedure was found to be impermissibly suggestive in that the accused was placed in a lineup with two police officers known to the witness and the fourth participant was dissimilar in appearance to the accused. Where the accused was wearing casual clothes and the other lineup participants were wearing white shirts and ties, the court in *United States ex rel. Ortiz v. Sielaff*, 404 F.Supp. 268 (N.D.Ill.1975), found the procedure to be impermissibly suggestive. Also found to be impermissibly suggestive were identification procedures where the accused was the only Puerto Rican in a lineup in which the other participants were dissimilar in appearance, *People v. Lebron*, 46 A.D.2d 776, 360 N.Y.S.2d 468 (2d Dept. 1974), and where the teenage defendants were placed in a lineup with obviously older individuals, *People v. Burwell*, 26 N.Y.2d 331, 258 N.E.2d 714, 310 N.Y.S.2d 308 (1970).

Applying the rationale underlying both lines of cases, this Court concludes that the identification procedure employed in the case at hand is more closely akin to the "green shirt" procedure frowned upon in *United States ex rel. Cannon v. Smith, supra*, than it is to those procedures not found to be impermissibly suggestive. Recollect that, as the trial court acknowledged, Mr. Lagana was the only patient in the hospital ward with facial bandages. Moreover, the testimony revealed that the only identifying witness knew prior to the identification that the person who had fought with the deceased had sustained a facial injury. Even aside from the possibility that the police may have suggested to Ms. Zaccario that she identify Mr. Lagana, the sole bandaged face coupled with the witness' knowledge of the facial injury mandate a finding

that the hospital identification procedure was impermissibly suggestive. Accordingly, the second step of the test is reached.

As has been noted, according to the Supreme Court's holding in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the second step leading to the resolution of whether an identification procedure infringed upon a defendant's guarantee of due process requires the application of the *Biggers* criteria to determine whether, notwithstanding the impermissibly suggestive nature of the procedure, the identification was nonetheless reliable. To reiterate, the *Biggers* Court directed a court to consider

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Applying such considerations to the instant matter, since the record is devoid of any evidence of a pre-identification description by Ms. Zaccario of the person who engaged in a fight with Mr. Pendolino, this factor need not be considered. As to the *Biggers* time factor, the record reflects that the time between the crime and the confrontation was a brief few hours. With respect to Ms. Zaccario's certainty at the confrontation, since she could not recollect the details of the identification at the suppression hearing, for the purpose of this inquiry, Detective O'Brien's statement that Ms. Zaccario positively identified Mr. Lagana can be accepted as true.

While these factors point to a finding of reliability, application of the remaining yet very critical factor does not. Specifically, according to Ms. Zaccario's own testimony, her opportunity to view the man who fought with the deceased was only for one "split second." Similarly, her opportunity to view the man with the bloodied face from the phone booth was also only for a "split second." Moreover, such brief obser-

 

vations occurred under lighting conditions characterized by Ms. Zaccario as "very dim" and "very dark". An impermissibly suggestive identification procedure based upon such a faint, attenuated opportunity to view the man who fought with the deceased cannot in any way be deemed reliable.[5]

While it is recognized that a state trial court's findings on pre-trial identification procedures are to be given great weight in a federal habeas corpus proceeding, *United States ex rel. Pella v. Reid,* *supra* at 384, this court has the duty to make an independent determination that due process has been observed in the state proceeding, *United States ex rel. Preston v. Mancusi,* 422 F.2d 940, 943 (2d Cir. 1970).

> Although the district judge may, where the state court has reliably found the relevant facts, defer to the state court's finding of fact, he may not defer to its findings of law. It is the district judge's duty to apply the applicable federal law to the state court fact findings independently.

*Townsend v. Sain,* 372 U.S. 293, 318, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963).

Making such an independent inquiry, this court finds that the petitioner's identification by witness Zaccario was impermissibly suggestive and unreliable under the *Biggers* criteria. The trial testimony of Detective O'Brien based on this tainted pretrial identification, therefore, should not have been admitted at Mr. Lagana's trial since the identification was not made "under circumstances consistent with such rights as an accused person may derive under the constitution . . . of the United States." N.Y.Crim.Proc.Law § 60.-25(1)(a)(ii) (McKinney 1970).

Since both state reviewing courts found that petitioner's conviction was based entirely on circumstantial evidence, *People v. Lagana,* 43 A.D.2d 834, 350 N.Y.S.2d 747,

748 (2d Dept.1974); *People v. Lagana,* 36 N.Y.2d 71, 73, 324 N.E.2d 534, 365 N.Y.S.2d 147, 148 (1975), "there is a reasonable possibility that the evidence might have contributed to the conviction", *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). The admission of the testimony based on the tainted identification was thus not harmless error, and the writ should be issued. Accordingly, it is hereby

ORDERED that the petitioner, Eugene Lagana, be and is hereby granted a writ of habeas corpus releasing him from custody unless a state court proceeding is commenced affording Mr. Lagana a new trial within thirty days of the date of the instant Decision and Order.

---

**5.** At this point, mention must be made that no examination need be undertaken as to whether, notwithstanding an improper pretrial identification procedure, the trial testimony had a sufficiently independent basis to dissolve such a taint. *See United States v. Wade,* 388 U.S. 218, 241, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149

(1967). Since Ms. Zaccario did not know Mr. Lagana, could not identify Mr. Lagana at either the suppression hearing or the trial, and since Detective O'Brien had no basis for identifying Mr. Lagana prior to the hospital confrontation, the issue of independent basis does not arise for consideration.