**UNITED STATES of America, Plaintiff,**

v.

**Robert BARNES et al., Defendants.**

**Nos. CR–74–293, CR–74–294.**

United States District Court,
W. D. New York.

July 27, 1976.

October 6, 1975. The hearing revealed this testimony.

Deborah Wilson, a Niagara County Deputy Sheriff, was on special assignment as an undercover narcotics agent with the Drug Enforcement Administration [hereinafter DEA] on October 3, 1974. At about 12:15 a.m., she was driving on Genesee Street in Buffalo, New York with Raymond Badgett, an informant, when an individual "flagged" her over to the side of the road. (Transcript of Suppression Hearing [hereinafter Tr.] at 4). The black male who had stopped them, later identified as Robert Barnes, got out of his car and approached Deputy Wilson's car on the passenger side. This individual, alleged to be Barnes, told Deputy Wilson that he "had some good stuff" and asked if they wanted to purchase any. He then directed them to meet him in another part of the city. (Tr. at 5, 6).

About twenty minutes later, the same parties met in a restaurant parking lot. The individual identified as Mr. Barnes got into the back of Deputy Wilson's car, gave her a glassine bag and she gave him $15. (Tr. at 9). The seller then gave the Deputy a phone number at which he could be reached for further purchases.

Richard J. Arcara, U. S. Atty., New York City (Richard E. Mellenger, Buffalo, N. Y., of counsel), for the Government.

Doyle, Diebold, Bermingham & Gorman, Buffalo, N. Y. (Mark J. Mahoney, Buffalo, N. Y., of counsel), for defendant Barnes.

David Gerald Jay, Buffalo, N. Y., for defendant Folmar.

CURTIN, Chief Judge.

On November 7, 1974, a federal grand jury returned two one-count indictments charging Robert Barnes with violations of 21 U.S.C. § 841(a)(1), in that he distributed controlled substances. Indictment CR–74–293 charged defendant Barnes alone, and indictment CR–74–294 also named Marilyn Folmar as codefendant.

The defendants have moved for the suppression of evidence pertaining to the identification of the defendants by Deputy Deborah Wilson, the Government's main witness in these cases. A hearing was held on

Arrangements were made with the seller for another meeting later that same morning. At approximately 3:30 a.m., the agent and her companion, Badgett, arrived at the bar and ordered drinks. Shortly thereafter, the agent observed the seller and a female companion being stopped by the Buffalo police. (Tr. at 24). The seller and his companion, later identified as defendant Folmar, entered the bar and joined the agent and Mr. Badgett. The conversation lasted between ten and thirteen minutes. (Tr. at 25). At the seller's direction, his female companion, later identified as Marilyn Folmar, went to the ladies' room with Deputy Wilson and sold her some narcotics. The women returned to the table and the seller and his female companion then left the bar.

Later in that same day, Deputy Wilson returned to DEA headquarters and was shown two pictures, one "mug shot" of each

of the defendants, front and profile views. She identified these photos as being those of the sellers of drugs with whom she had dealt earlier in that day.

The prosecution wishes to utilize the testimony of Deputy Wilson as to her identification of the defendants. Not only does the prosecution seek to have Deputy Wilson make an in-court identification, but also the Government wishes to introduce testimony concerning her out-of-court photographic identification. (Tr. at 45; Government's Memorandum at 6, 12).

Conceding that the viewing of a single photograph was suggestive, the prosecution argues that the controlling consideration in determining if in-court and out-of-court identification testimony should be allowed is ". . . whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 199 [93 S.Ct. 375, 382, 34 L.Ed.2d 401] (1972). The defendants argue that while such a test may be appropriate for determining the admissibility of the in-court identification, the out-of-court identification should be excluded *per se* once a determination is made that it is unnecessarily and impermissibly suggestive.

The problem originates with the Supreme Court's ruling that identification testimony of lineups conducted outside of the presence of counsel would be excluded from trial automatically. *United States v. Wade*, 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967); *Gilbert v. California*, 388 U.S. 263, 272–73 [87 S.Ct. 1951, 18 L.Ed.2d 1178] (1967). That Court reasoned such a per se exclusionary rule was necessary ". . . to assure that law enforcement authorities will respect the accused's [newly enunciated] right to the presence of his counsel at the critical lineup." *Gilbert v. California, supra*, at 273 [87 S.Ct. at 1957]. The Court, concerned by the great potential for suggestiveness and the inherent hazards of eyewitness identification, ruled that a post-indictment lineup was a "critical stage" of the prosecution at which the accused was

entitled to assistance of counsel. *Id.* at 229–37 [87 S.Ct. 1951]

▮ However, the right to assistance of counsel has not been extended to a witness's viewing of a photographic display. *United States v. Counts*, 471 F.2d 422, 425 n.2 (2d Cir. 1973); *United States v. Johnson*, 467 F.2d 630, 639 (2d Cir. 1972); *United States v. Bennett*, 409 F.2d 888, 899–900 (2d Cir.); *cert. denied*, 396 U.S. 852 [90 S.Ct. 113, 24 L.Ed.2d 101] (1969). But, there exists independent of any right to counsel the possibility that the photographic identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [a defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 302 [87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199] (1967). This due process right actually poses several questions. First, was there a due process violation? Second, if there was, will testimony of such a pretrial identification be allowed at trial? Third, if there was a due process violation, will the witness be allowed to make an in-court identification? The Second Circuit recently discussed the problems in a quite similar factual setting. *Brathwaite v. Manson*, 527 F.2d 363 (2d Cir. 1975). There, a police officer, Trooper Glover, who had made a purchase of narcotics from a black man, described the seller to a fellow officer who then selected Brathwaite's picture and presented it to Officer Glover, who identified the man as the person from whom he had purchased drugs. At trial Officer Glover made an in-court identification of the defendant and also testified as to the photo identification. *Id.*, at 364–365. The Government conceded that exhibition of the single photo was impermissibly suggestive, but defended testimony as to the pretrial identification as being proper under *Neil v. Biggers, supra*. In *Neil*, Justice Powell seemed to open the door to the introduction at trial of testimony of suggestive pretrial identifications. Justice Powell ruled that "the primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification'" and concluded:

While the phrase was coined as a standard for determining whether an in-court

identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of "irreparable" it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself. It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in *Foster*. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* makes clear, the admission of evidence of a showup without more does not violate due process.
*Neil v. Biggers, supra*, 409 U.S. at 198 [93 S.Ct. at 381], cited in *Brathwaite v. Manson, supra*, at 367, 368.

In our case, the Government argues that the "very substantial likelihood of misidentification" test should be applied as a basis for admitting testimony as to the pretrial photo identification. After an arduous explication of the major cases in *Brathwaite*, Judge Friendly concluded that the *Neil* case involved an identification that had occurred before the *Wade-Gilbert-Stovall* trilogy in 1967, and that the *Neil* case was applicable only to pretrial pre-*Stovall* suggestive photographic identifications, and that for post-*Stovall* cases "[e]vidence of an identification unnecessarily obtained by impermissibly suggestive means must be excluded under *Stovall* . . . ." *Brathwaite v. Manson, supra*, at 371. Judge Friendly concluded in this fashion:

> No rules less stringent than these [per se exclusion of unnecessarily and impermissibly suggestive pretrial identifications and exclusion of subsequent in-court identifications that also give rise to substantial likelihood of irreparable misidentification] can force police administrators and prosecutors to adopt procedures that will give fair assurance against the awful risks of misidentification.

*Brathwaite, supra*, at 371.

With this understanding of the law, it is appropriate to review the facts of the present case to determine whether the motions to suppress which were tentatively granted from the bench should be made final. The first question must be whether the photographic showings of profile and frontal views only of the defendant were unnecessarily and impermissibly suggestive. While a felony had been committed, it was not of the type classified as "serious" that would necessitate swift action by DEA agents in identifying and apprehending the suspects. *See Simmons v. United States*, 390 U.S. 377, 384 [88 S.Ct. 967, 19 L.Ed.2d 1247] (1968). No one was on his death bed and identification could have been made up to several days later if that time were necessary to utilize a less suggestive technique. *Stovall v. Denno, supra*, 388 U.S. at 302 [87 S.Ct. 1967].

Deputy Wilson was told before she identified Barnes' photo, by a member of her surveillance team who had been in the vicinity of Deputy Wilson throughout the sales of drugs, that the person with whom she had dealt was Robert Barnes. (Tr. at 30–31). She also testified that the informant who was with her during the sales had believed the seller's name was Barnes. *Id.* In addition, Deputy Wilson testified that there was a name on the back of the photo she identified as defendant Barnes. (Tr. at 29–30). In addition, the use of a single photo which the Government admits is suggestive, as it must, was also impermissibly suggestive. *United States ex rel. Rivera v. McKendrick*, 448 F.2d 30 (2d Cir. 1971) (use of single photo "highly suggestive"); *Simmons, supra*, 390 U.S. at 383 [88 S.Ct. 967]. The display of one photo, when the agents had literally thousands to select from and could have easily presented an array of photos, approaches the inexcusable. This court rules that the display of a single photograph of each of the defendants to Deputy Wilson was unnecessarily and impermissibly suggestive and, therefore, evidence of that identification must be excluded from trial. *Brathwaite, supra*, at 371. The motions to suppress that testimony are granted.

■ The next question is whether the particular circumstances in this case gave rise to a very substantial likelihood of irreparable misidentification. While Deputy Wilson did see the male distributor of drugs three times on the day in question, the opportunities for observation were less than optimum. At the first meeting on Genesee Street, Deputy Wilson testified that the scene was illuminated by street lamps (Tr. at 10, 19), the conversation lasted one to two minutes (Tr. at 19), that she was seated in the driver's seat and spoke to the seller of drugs who was standing on the passenger side. (Tr. at 18). The second meeting (the first sale of drugs) took approximately three minutes (Tr. at 22); the seller got into the back seat of Deputy Wilson's car; the lighting was "fairly poor" (Tr. at 9); and Deputy Wilson testified she could "not clearly" observe the seller's face. (Tr. at 9–10). While the seller got out of his car and walked over to the Deputy's car, Ms. Wilson did not watch him. (Tr. at 36). The third meeting (the second sale of drugs) lasted thirteen minutes (Tr. at 25); the lighting was described as not bright, rather indirect (Tr. at 27); and Deputy Wilson testified that she went to the ladies' room with the female seller of drugs for "a couple minutes." (Tr. at 26).

While the witness's level of certainty demonstrated during the photo showings seemed high, identification by an undercover agent, whose job it is to daily make identifications, is less persuasive than that of an ordinary citizen, bystander or victim. *Brathwaite, supra,* at 371. When shown the single picture of defendant Barnes, Deputy Wilson commented that it was a bad picture of him. (Tr. at 15, 28). The description she provided of the seller in her report is strikingly lacking in enumeration of facial details (facial hair, hair style, etc.). (Tr. at 17).

Of crucial significance are the facts that Deputy Wilson believed that the informant who accompanied her knew the seller of drugs as Barnes (Tr. at 30); that she

thought one of her surveillance team members had selected the photo (Tr. at 42); that the surveillance team told her the seller was Robert Barnes before she saw the photo, and that Deputy Wilson thought that the members of the surveillance team knew defendant Folmar's name because they were given that name by some Buffalo police officers who stopped the two sellers of drugs shortly before the second sale. (Deputy Wilson was not certain on this last point). (Tr. at 43). All these facts contribute to the conclusion that Deputy Wilson believed before the photo identification that there was significant other evidence linking the people whose photos she was about to be shown to the criminal sale of drugs earlier in the day. She had strong reason to believe that progress of the investigation was quite advanced and that the pictures she would be shown were of the two people who were strong suspects in the crimes. *See Simmons, supra,* at 383, 385 [88 S.Ct. 967]. While the time between the criminal acts and the photographic identification was short and she did pay some attention to the details of each meeting, this court concludes that under the "totality of the circumstances" the photographic identifications were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.[1] *Simmons v. United States, supra; Brathwaite v. Manson, supra.* The Government has not met its burden of proving the precautionary conditions of *Simmons* have been met. *Brathwaite v. Manson, supra,* at 372. To allow the witness to make in-court identification of either defendant would be improper in the circumstances of the case. The prosecution has not shown by clear and convincing evidence that the future in-court identification would be based on a source independent of the photographic display. *United States v. Wade, supra,* 388 U.S. at 241–243 [87 S.Ct. 1926]; *Stovall v. Denno, supra,* 388 U.S. at 301–302 [87 S.Ct. 1967]; *Gilbert v. California, supra,* 388 U.S. at 272 [87 S.Ct. 1951]; *Brathwaite v. Manson, supra,* at 372; *United States v. Gambrill,* 146

---

1. Such a finding also means that the pretrial identification must be excluded from evidence

even under the pre-*Stovall* standard of *Neil v. Biggers, supra.*

U.S.App.D.C. 72, 449 F.2d 1148, 1153 (1971). Stated in another fashion, the Government has not proven that the witness had such definite images of the defendants in her mind that her in-court identification would be based on those images rather than the photographic display. *United States ex rel. Phipps v. Follette*, 428 F.2d 912, 915 (2d Cir.), *cert. denied*, 400 U.S. 908 [91 S.Ct. 151, 27 L.Ed.2d 146] (1970); *United States ex rel. Gonzalez v. Zelker*, 477 F.2d 797, 801 (2d Cir. 1973). The motions to suppress the in-court identifications are granted as to both the defendants.

So ordered.