UNITED STATES of America, Plaintiff,

v.

Melvin PORTER, Defendant.

CR–74–276.

United States District Court,
W. D. New York.

April 21, 1977.

Richard J. Arcara, U. S. Atty. (Richard E. Mellenger, of counsel), Buffalo, N. Y., for the Government.

Joseph V. McCarthy, Buffalo, N. Y., for the Defendant.

CURTIN, District Judge.

On November 7, 1974, the defendant Melvin Porter was indicted with Fred Bachelor for a violation of Title 21, United States Code, § 841(a)(1) (dispensing or distributing a controlled substance), which allegedly occurred on August 6, 1974. On November 19, 1975, Fred Bachelor pled guilty and was subsequently sentenced to a four-year term of incarceration. Progress toward a disposition of the charge against Porter has been somewhat slower. Several unsuccessful efforts were made to set a trial date in early 1976. Further delay was caused when the former defense counsel requested to withdraw. New counsel was assigned in the summer of 1976 and a trial date was tentatively set for October of 1976.

However, near the new trial date, Miss Deborah Wilson, the Government's primary identification witness, informed the Assistant United States Attorney that because of the lapse of two years since the time of the acts alleged in the indictment, she was unsure whether or not she could still identify the defendant. The court then ordered a lineup which was held on November 29, 1976. At the lineup Miss Wilson identified the defendant as the person from whom she had purchased drugs on August 6, 1974.

A hearing on defendant's motion to suppress identification testimony was then held on December 29, 1976. Defendant has now moved to suppress certain photo-identification evidence as well as the lineup identification evidence. Defendant also seeks a ruling that would prohibit in-court identification of the defendant by Miss Wilson because of the allegedly suggestive nature of out-of-court identification procedures. The court has received briefs from both sides which address the issues presented by this motion to suppress.

Miss Wilson is a deputy sheriff with the Niagara County Sheriff's Department. During 1974 she participated with officers of the Drug Enforcement Administration in extensive investigations of drug sales in the Buffalo and Niagara Falls area. Numerous arrests resulted from these investigative efforts. The pattern of investigation in this

case was similar to that followed in other cases. Deputy Wilson would accompany an informant of the Drug Enforcement Administration [D.E.A.]. They would then meet with the person being investigated and, after introduction by the informant, Miss Wilson would purchase drugs from the suspect. The activities of Deputy Wilson, the informant and the suspects were also under surveillance by other agents of the D.E.A. In some cases, such as this one, only one meeting and sale occurred. In others, the agent met with the prospective defendant on two or three occasions. After the transaction was completed, Deputy Wilson was often shown a single photograph, allegedly of the person she had just dealt with, by another agent of the D.E.A. As indicated below, that practice was followed in the case now before me.

In this case, Deputy Wilson has testified that she was introduced to Fred Bachelor by an informant. After a brief discussion, Bachelor left the agent's vehicle and returned about five minutes later with another black male who was introduced to Wilson as "Melvin" (later identified by Wilson as the defendant Melvin Porter). Deputy Wilson was in the passenger's seat and Bachelor and Porter were in the rear seat of the vehicle. After driving a short distance to another location, Bachelor and Porter left the vehicle and returned about an hour later. The illicit drug transaction occurred on their return. The defendants were then driven back to the original meeting place, about five or ten minutes from the site of the transaction.

These activities occurred at noon on August 6, 1974. The defendants were in the deputy sheriff's presence for about fifteen to twenty minutes and, while they were in the car, she engaged them in conversation during this period, turning around in the passenger seat to look at both defendants as they conversed.

About a week after the transaction, Deputy Wilson was shown a photograph of Melvin Porter. At the Wade hearing of December 29, 1976, Deputy Wilson testified that she was not sure whether this was a single photograph or whether it was a spread of photos. Because of Deputy Wilson's uncertainty, I will assume that it was a single photographic display.

Deputy Wilson recalls that, at the time of sale, defendant Melvin Porter was clean-shaven. The single mug shot which Deputy Wilson observed some time after the sale depicts the defendant as having a full beard. Deputy Wilson was shown the same mug shot when she appeared before the grand jury on October 25, 1974. At that time she identified the photo as that of Melvin Porter.

■ This practice of placing only a single photograph of a suspect before a witness for purposes of identification has been condemned by the Second Circuit in *Brathwaite v. Manson*, 527 F.2d 363 (2d Cir. 1975), *cert. granted*, 425 U.S. 957, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976), and by this court in *United States v. Barnes*, 416 F.Supp. 1176 (W.D.N.Y.1976). In *United States v. Barnes*, which involved a similar identification made by Deputy Wilson, I ordered that such an impermissibly suggestive and unnecessary photographic identification must be suppressed. *See also United States ex rel. John v. Casscles*, 489 F.2d 20, 24 (2d Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). The Government concedes in its brief that these photographic identifications may have been unnecessarily suggestive and that the original photographic identifications utilized in this case should be suppressed for the purposes of trial. I find that the evidence adduced from the single-photo identification must be suppressed because the identification procedures were so unnecessarily suggestive and so conducive to irreparable mistaken identification that the defendant would be denied due process of law if this evidence was admitted at trial. *See Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Brathwaite v. Manson, supra.*

The next issue to be addressed is whether or not evidence of Deputy Wilson's identification of defendant Porter at the court-ordered lineup should be admitted upon trial

of this matter. At the lineup conducted on November 29, 1976, Deputy Wilson selected Melvin Porter from a group of five individuals as one of the persons with whom she had dealt on August 6, 1974. Deputy Wilson had previously described the man she encountered on August 6, 1974 as a black male, about 5'10" tall, slight build, black hair and brown eyes, and clean-shaven on the day of the alleged transaction. At the Wade hearing, she testified that her most vivid recollection of Porter was that he was thin, clean-shaven at the time of the alleged transaction, and had a full beard when the mug shot was shown to her.

At the December 29, 1976 hearing, the photographs of the lineup, as well as detailed descriptions of the other lineup participants, were received in evidence. The individuals in the lineup ranged in age from 31 to 38 years. The defendant Melvin Porter is 34 years old. Porter was the only participant in the lineup with a beard. At the time of the lineup Porter did not have a full beard as he did at the time the contested mug shot was taken. Rather, Porter was wearing a trim goatee at the lineup. Three other lineup participants had facial hair in the form of mustaches. The other participants were much heavier than Porter, 190 pounds and over, in contrast to his 150 pounds. Two were slightly over 6 feet in height, and the two who were about the same height as Porter were, naturally, heavier in build. All participants were similarly dressed in casual attire and all were black males.

Evidence presented at the Wade hearing indicates that three of the participants were, at the time of the lineup, employed as courtroom deputies in the Erie County Sheriff's Department and worked in the courtrooms of Erie County Hall. The fourth individual was employed by the Buffalo Police Department. Miss Wilson testified that she did not know and had not seen any of these other four prior to the lineup and stated that she had only been in the Erie County Hall, where the courts are located, on two prior occasions. She testified that, during these visits, she was not in the part of the Court building where trials are held, that is, in the areas frequented by the courtroom deputies. There is no reason to suspect that Deputy Wilson has not been truthful in this regard.

I realize that it is not easy to obtain individuals to stand in lineups. Nevertheless, it appears that the procedure followed was a careless one under the circumstances. Because of the nature of the work of the deputy sheriff, the use of individuals who were so close to the operation of the courts was certainly not designed to avoid unnecessary difficulties in this case. However, the lineup appears to have been otherwise properly conducted, with defendant's attorney present throughout the identification proceeding.

In opposition to defendant's motion, the Government argues that the lineup was not so impermissibly suggestive as to require suppression. Under the circumstances presented by this case, I must determine whether, based on all of the circumstances surrounding the confrontation, the lineup was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *United States ex rel. Springle v. Follette*, 308 F.Supp. 580, 583 (S.D.N.Y.1970), *aff'd* 435 F.2d 1380 (2d Cir. 1970), *cert. denied sub nom. Springle v. Zelker*, 401 U.S. 980, 91 S.Ct. 1214, 28 L.Ed.2d 331 (1971).

 As previously indicated, certain discrepancies existed between the appearance and physique of the defendant and those of the other participants in the lineup. However, as Judge Friendly has recognized, there is no requirement that a defendant in a lineup must be surrounded by people nearly identical in appearance, however desirable that may be. *United States v. Reid*, 517 F.2d 953, 966, n. 15 (2d Cir. 1975). In *United States ex rel. Pella v. Reid*, 527 F.2d 380, 384 (2d Cir. 1975), the Second Circuit Court of Appeals found that the fact that the defendant, a short man, was placed in a lineup with mostly taller men, "while certainly not the most desirable procedure, does not by itself warrant a finding of unnecessary suggestiveness." *See also*

*United States v. Jackson*, 166 U.S.App.D.C. 166, 509 F.2d 499 (1974) (of eleven men in lineup, defendant was the only participant with a "bush" or Afro hairstyle); *United States v. Hines*, 147 U.S.App.D.C. 249, 455 F.2d 1317, 1329–30 (1972), *cert. denied*, 406 U.S. 975, 92 S.Ct. 2427, 32 L.Ed.2d 675 (1972). *Cf. United States ex rel. Cannon v. Smith*, 527 F.2d 702 (2d Cir. 1975). It is true that the defendant was of slighter build than the other lineup participants and that, by Deputy Wilson's own admission, this characteristic stood out in her mind. However, this distinguishing characteristic alone is not enough to require suppression of this lineup identification evidence. Nor does the fact of the impermissible photographic identification, which must be suppressed, invalidate the lineup identification. A lengthy interval of approximately two years elapsed between the impermissibly suggestive photographic display and the lineup. In addition, the mug shot of the defendant pictured him with a full beard, whereas he was wearing a goatee at the time of the lineup. And finally, the fact that the defendant was the only one in the lineup with facial hair other than a mustache does not render the identification procedure impermissibly suggestive since Deputy Wilson's only past associations with defendant were an alleged personal contact on August 6, 1974, when, according to Deputy Wilson's testimony, defendant was clean-shaven, and two viewings of a photo of defendant taken at a time when he had a full beard.

■ The procedures used at the lineup are subject to the criticisms that I have noted above. However, I find that neither a due process violation nor a miscarriage of justice occurred as a result of the procedures that were relied on. Deputy Wilson's lineup identification testimony is therefore admissible at trial. *See United States ex rel. Pella v. Reid, supra; Caver v. State of Alabama*, 537 F.2d 1333, 1334–5 (5th Cir. 1976); *White v. State of Alabama*, 541 F.2d 1092 (5th Cir. 1976).

■ The only remaining issue to be addressed is whether or not Deputy Wilson should be allowed to make an in-court identification of the defendant even though I have found the photo identification to be impermissibly suggestive and conducive to mistaken identification. The standard to be applied here is much the same that was applied to resolve the two previously stated issues: under the "totality of the circumstances," would there be a likelihood that Deputy Wilson's in-court identification would be reliable as stemming from her original observations, even though the photo identification procedure was impermissibly suggestive? *United States ex rel. John v. Casscles, supra*, 24–26; *cf. Brathwaite v. Manson, supra* at 367–69. The Supreme Court has enumerated some of the factors to be considered in evaluating the possibility of mistaken identification:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

Since the witness was a deputy sheriff who knew that she would be called on to testify later, her incentive to observe the defendant during the course of the criminal transaction and to be able to report his identity accurately was great. Deputy Wilson clearly had considerable time to view the accused at close range, a period of fifteen to twenty minutes in an automobile during midday.

From Deputy Wilson's testimony, it would appear that her memory and description of the witness includes the salient factors characteristic of his features, build and appearance. At the Wade hearing held in this court, Deputy Wilson expressed a high degree of certainty with respect to the lineup identification. At this point I can only speculate as to how certain any identification made at trial would be. This is a matter that should more appropriately be

explored by counsel upon trial of this matter.

A period of approximately two years has elapsed since the witness allegedly viewed the defendant in the course of an illegal drug transaction. By the same token, an almost equal period of time has elapsed since the impermissible photo was displayed before the witness. While it would be preferable for a shorter time period to have elapsed between the incident and the trial of this matter, I do not find the lengthy delay alone to be a factor which requires suppression of Deputy Wilson's anticipated in-court testimony.

Finally, it has been recognized in this circuit that "other evidence connecting a defendant with a crime may be considered on the issue [of] whether there was a substantial likelihood of misidentification." *United States v. Reid, supra,* at 967; *United Staes ex rel. Gonzalez v. Zelker,* 477 F.2d 797, 803–04 (2d Cir.), *cert. denied sub nom. Gonzalez v. Vincent,* 414 U.S. 924, 94 S.Ct. 254, 38 L.Ed.2d 158 (1973). This, of course, is a matter that should be developed at trial by counsel to be argued to the court and to the jury. If the evidence warrants, it may be appropriate *for defendant's counsel to* renew this aspect of his motion at the trial. In addition, if it is deemed to be appropriate at trial, precautionary measures may be taken to guard against the possibility of error in the in-court identification. *See, e. g., United States v. Reid, supra,* at 965–66, n. 15.

In summary, I find that the single-photo identification evidence must be suppressed. The lineup identification testimony, though subject to criticism, is admissible. Based on the facts presently before me, Deputy Wilson should be allowed to attempt to make an in-court identification of the defendant, subject to the attendant safeguards noted in this decision.

So ordered.