Jorge TAVAREZ, a/k/a Fausto De Lo Santo, Petitioner,

v.

Eugene LeFEVRE and Robert Abrams, Respondents.

No. 84 Civ. 1843.

United States District Court, S.D. New York.

Nov. 25, 1986.

tion for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Tavarez seeks to overturn his conviction for robbery. Petitioner was convicted by a jury of robbery in the second degree on April 17, 1980, and was sentenced to an indeterminate term of imprisonment up to five years. In his petition, Tavarez raises the following grounds for relief: (1) that a delay of twenty-eight months between the commission of the robbery and the handing down of an indictment against petitioner deprived him of his due process right to a prompt prosecution; (2) that the pre-trial identification proceeding was unduly suggestive; and (3) that the *Wade* hearing was improperly held, denying Tavarez his due process rights.

Petitioner appealed his conviction to the Appellate Division, First Department, raising the same three grounds for relief cited in petitioner's habeas petition. On April 18, 1982, the Appellate Division unanimously affirmed petitioner's conviction without opinion, and, on May 3, 1982, the New York Court of Appeals denied leave to appeal.

For the following reasons, the Court finds petitioner's claims to be without merit, and therefore denies the petition for habeas corpus.

### A. *Pre-Arrest Delay.*

■ Petitioner claims that the twenty-eight month delay between the commission of the robbery on December 18, 1975, and his arrest for that robbery on April 12, 1978, constituted a violation of petitioner's right to a speedy trial and a denial of due process.

Petitioner and two other men robbed a plumbing contractor's office and three of its employees (Lionel Selly, Peggy McCook and Hector Rivera) on December 18, 1975. Later that day, the three employees were taken to a police station where they examined hundreds of photographs and identified the petitioner to Detective Carter of the Robbery Squad as a participant in the robbery. Detective Carter determined petitioner's last known address to be an abandoned building. The detective also searched for the petitioner in the area near the crime on numerous occasions, and, on

Jorge Tavarez, *pro se.*

Robert Abrams, Atty. Gen., by Arlene Silverman and Monica Jacobson, New York City, for respondents.

---

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The above-captioned action is before this Court upon petitioner Jorge Tavarez peti-

February 11, 1976, issued a "wanted card" for petitioner under the name Jorge Tavarez.

Petitioner was arrested almost one year later on December 31, 1976 on an unrelated weapons charge, under the name "Jose De Los". Despite the difference in nomenclature, "Jose De Los" was identified by the Bureau of Criminal Investigation ("BCI") as Jorge Tavarez. According to the BCI's records, on January 3, 1977, the Wanted Card unit of the BCI informed the Robbery Squad, by telephone, that defendant had been arrested. The Robbery Squad has no record of receiving that information, and no action was taken on it.

On March 24, 1978, petitioner was arrested again. He was charged with a misdemeanor and a traffic violation under the name "Francisco Marine". Petitioner was again identified by the Wanted Card unit of the BCI which, on April 5, 1978, notified the Robbery Squad of petitioner's arrest. Detective Carter, acting upon that notice, arrested petitioner for the December 1975 robbery when petitioner appeared in court on April 12, 1978. Petitioner was indicted on April 21, and arraigned on May 11, 1978. Petitioner did not move to dismiss the indictment against him for lack of speedy prosecution until August 10, 1979, fifteen months after his arraignment.

The Court finds that petitioner's right to a prompt prosecution was not violated.

As a preliminary matter, the Court notes that the Sixth Amendment speedy trial provision does not engage until someone is "accused"—that is, until a formal indictment or information is handed down or an actual arrest is made. *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). The period of delay between the commission of a wrongful act and the discovery and arrest of its perpetrator is primarily controlled not by the Sixth Amendment, but by the statute of limitations applicable to the particular offense. *United States v. Ewell,* 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966). *See Toussie v. United States,* 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 56 (1970); *United States v. Feinberg,* 383 F.2d 60, 65 (2d Cir.1967), *cert. denied,* 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968). In this case, a five-year statute of limitations applies—over double the period which elapsed between the commission of the robbery and petitioner's arrest.

Petitioner claims, however, that the prosecution's neglect and inadvertence in failing to effect a timely arrest is "inexcusable" and mandates the granting of his habeas petition. The Court finds that even if the pre-arrest delay was "unjustifiable or unnecessary"—which is not the case here—petitioner's conviction would not be invalidated absent a showing of prejudice caused by the delay. *Feinberg, supra,* 383 F.2d at 67. The Second Circuit and the New York Court of Appeals essentially employ the same standard for ascertaining whether a delay has violated a defendant's right to a speedy trial. Generally, this Court will consider:

> the length of the delay, the reason for it, the extent of the prejudice, and whether or not the defendant has made a specific demand for a speedy trial.

*United States v. Singleton,* 460 F.2d 1148, 1150 (2d Cir.1972), *cert. denied,* 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973). *Cf. People v. Taranovich,* 37 N.Y.2d 442, 373 N.Y.S.2d 79, 335 N.E.2d 303 (1975).

Applying these standards to the instant case, the Court finds that petitioner's rights under the Sixth Amendment have not been violated.

It is undisputed that, prior to petitioner's arrest in December 1976, the police conducted a diligent and exhaustive search for petitioner. Thus, good cause existed for twelve months of the twenty-eight month delay between commission of the robbery and petitioner's arrest. The remaining sixteen-month delay, attributable to the prosecution, arose from a miscommunication between the BCI and the Robbery Squad, and was not intentional or malicious.

Furthermore, the petitioner has not demonstrated that he was prejudiced by the

delay. No presumption of prejudice arises out of a pre-arrest delay, and there is no indication on the record that petitioner was so prejudiced. Petitioner does not specifically claim that evidence was lost or witnesses' testimony impaired because of the delay. The witnesses presented at trial by the Government suffered only slight memory lapses and were able to refresh their memories from documents prepared soon after the robbery. They were, moreover, questioned extensively at the time of the offense. *See Feinberg, supra,* 383 F.2d at 65–66 (delay of almost five years between time of alleged offense and prosecution did not violate defendant's constitutional rights).

Petitioner has, moreover, failed to articulate any specific prejudice and the Court cannot find in the record any indication of prejudice to petitioner. It is clear that vague and conclusory assertions of prejudice are inadequate to support a Sixth Amendment claim. *United States v. Nazzaro,* 472 F.2d 302 (2d Cir.1973). *See United States v. Roemer,* 514 F.2d 1377 (2d Cir.1975). The Court notes that petitioner was not incarcerated on the robbery charge for any part of the twenty-eight month period, and indeed, petitioner did not object to the delay (by making a motion to dismiss the indictment for lack of prosecution) until fifteen months after his arraignment. *See e.g., United States v. Infanti,* 474 F.2d 522 (2d Cir.1973) (twenty-eight month delay between arraignment and trial did not constitute a speedy trial violation where defendant did not object to the delay until twenty-two months after his arrest). The Court thus finds that petitioner's right to a prompt prosecution has not been violated.

### B. *Identification Procedures.*

The circumstances of the robbery were as follows:

On December 18, 1975, three men, claiming to be seeking employment, entered a plumbing contractor firm in Manhattan. One of the men spoke briefly with an employee of the company, Lionel Selly, and told him that they would return later. The three intruders returned later that afternoon. The tallest intruder drew a gun on Selly. The three intruders together forced Selly, his co-employee Peggy McCook, and the landlord, Mr. Reese, into a back room and forced them to empty their pockets. The lights in the back room were bright, consisting of five fluorescent bulbs. After questioning Selly, McCook and Reese about the whereabouts of valuables in the office, the intruders tied up the victims and placed them in a bathroom. Hector Rivera, another employee who had arrived in the midst of the incident, was also bound and placed in the bathroom. Selly, McCook, Reese and Rivera (the "witnesses") were released eight to ten minutes later, after the intruders had gone.

The witnesses were questioned by the police, and both Selly and McCook gave descriptions of the robbers. They described the shortest intruder—later identified as the petitioner—as being five feet five inches tall.

That same day, Selly, McCook and Rivera went to the stationhouse to examine files of photographs. McCook testified that she had recognized a photograph of petitioner as the shortest of the intruders and had passed the photograph to Selly and Rivera, asking if it looked familiar. Selly testified, however, that when passing him the photograph, McCook said "this is the guy". Both Selly and Rivera agreed with McCook's identification of the photograph.

McCook later testified that, sometime after the robbery, she saw petitioner on the street. She did not, however, inform the police.

On April 12, 1978, Detective Carter asked McCook to view a lineup. It is unclear whether McCook was informed by Detective Carter that the person whose photograph she had identified had been arrested, or whether she simply assumed that fact. Detective Carter also asked Selly to view the lineup, stating that he had a suspect in the case. The other participants in the lineup were all taller than the petitioner. In order to equalize their heights, De-

tective Carter had all the participants sit during the viewing.

Selly and McCook separately viewed the lineup; each identified petitioner as the shortest intruder.

A *Wade* hearing was held pursuant to defendant's motion to suppress Selly's and McCook's lineup and in-court identifications. The prosecution called Selly and McCook as witnesses and introduced into evidence a photograph of the lineup. The petitioner called Detective Carter to testify. The court found that the identification procedures used were not unduly suggestive and denied petitioner's motion to suppress.

Petitioner claims that he was denied due process of law on three grounds: (1) the identification testimony was improper since the three witnesses were permitted to view the photographs simultaneously; (2) the *Wade* hearing was improperly conducted in that petitioner was the shortest participant in the lineup; and (3) Hector Rivera was allowed to testify at trial as to his identification of the petitioner despite the prosecution's failure to call Rivera as a witness at the *Wade* hearing.

### 1. *Photograph Identifications.*

■ Defendant claims that the "group identification" of petitioner's photograph was unduly suggestive, and tainted the witnesses' subsequent identifications at the lineup and at the trial.

The subsequent identifications were only improperly admitted into evidence if the photo identification procedure was unduly suggestive, and the prior procedure gives rise to a "very substantial likelihood of irreparable misidentification". *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).

First, the photo identification was held on the same day as the robbery. Selly, McCook and Rivera viewed hundreds of photographs from the police files and each recognized only petitioner. Each witness

had ample opportunity to observe the petitioner at the time of the robbery. Although McCook indicated to the other witnesses that she found petitioner's photograph familiar, the Court cannot find the identification procedure to be so suggestive as to render the entire procedure improper.

■ Second, even if the group identification of petitioner's photo was unduly suggestive, there existed an independent basis for the subsequent identifications. The record demonstrates that the subsequent identifications were based on petitioner's active role in the robbery (which lasted between fifteen to thirty minutes), rather than on the witnesses' brief look at his photograph. Both Selly and McCook were able to pick petitioner out of a lineup almost two and one-half years later. Both gave descriptions of petitioner to Detective Carter at the time of the robbery which match petitioner. The Court finds the witnesses' subsequent identifications to be reliable, thus removing any taint from the photographic identification procedure. *Id.*

### 2. *Lineup Identification.*

■ The Court finds that the lineup was fair, although petitioner was approximately two inches shorter than the other participants. There is no requirement that a suspect in a lineup be surrounded by people identical in appearance. *See e.g., United States ex rel. Pella v. Reid*, 527 F.2d 380 (2d Cir.1975) (short defendant in lineup with taller men); *United States v. Porter*, 430 F.Supp. 208 (W.D.N.Y.1977) (slightly-built defendant in lineup with considerably larger participants). Since all the lineup participants were seated, any height difference was substantially minimized; moreover, the record indicates that the facial characteristics of the participants were similar.[1] It is clear that the lineup was fair, since the witnesses to the lineup did not rely on petitioner's height in order to identify petitioner, and there was not a substantial likelihood of misidentification.

---

1. The Court presumes this finding, made by the judge at petitioner's *Wade* hearing, to be correct.

28 U.S.C. § 2254(d).

Petitioner also argues that the lineup was unduly suggestive since—according to McCook's testimony at the *Wade* hearing—Detective Carter had told McCook that the man whose photograph she had identified would be at the lineup. It is unclear from the record whether Detective Carter actually made that statement. Moreover, anyone called to view a lineup, who had previously selected a photograph from police files, would most likely expect the suspect to be included in the lineup. Detective Carter's remark, if made, would not invalidate the fairness of the lineup.

3. *Admission of Rivera's Testimony.*

Petitioner maintains that since Hector Rivera did not testify at the *Wade* hearing, his courtroom identification of petitioner was improper and prejudicial. The Court finds this argument to be without merit. At the *Wade* hearing, the prosecution called Selly and McCook as witnesses, satisfying their burden of going forward at a *Wade* hearing. *See People v. Sutton,* 47 A.D.2d 455, 459, 366 N.Y.S.2d 500 (4th Dept.1975). The petitioner called Detective Carter to the stand but failed to call Rivera. The prosecution does not bear the onus of calling every witness when the defense has the same opportunity, and fails to do so.

Furthermore, the petitioner was not prejudiced by Rivera's in-court identification testimony despite his absence at the *Wade* hearing. The purpose of the *Wade* hearing was to determine whether any pre-trial identification procedure was unduly suggestive, thereby tainting the witness' identification. Rivera's trial testimony demonstrates, however, that Rivera had a reliable independent basis for his in-court identification. Rivera observed petitioner during the commission of the robbery, furnished the police with petitioner's description immediately after the robbery, and was able to recall at trial his description of petitioner. Petitioner's due process rights were thus not abridged by Rivera's failure to testify at the *Wade* hearing.

The Court finds that petitioner was not denied his Due Process or Sixth Amendment rights. Accordingly, this petition for habeas corpus relief is denied.

SO ORDERED.