UNITED STATES of America

v.

Michael T. MARSHALL.

Crim. No. 92–253 (OG).

United States District Court, District of Columbia.

Nov. 19, 1992.

**6**

Halsey B. Frank, Asst. U.S. Atty., Washington, D.C., for the U.S.

Shawn Moore, Washington, D.C., for defendant.

## MEMORANDUM

GASCH, Senior District Judge.

Defendant was convicted by a jury of bank robbery and armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d). Prior to trial, which commenced on November 17, 1992, defendant moved to suppress the lineup identification testimony of Jeffrey Scott, a teller at the 1229 Connecticut Avenue branch of the Independence Federal Savings Bank, which defendant robbed on May 6 and May 26, 1992. Defendant contended that the lineup he appeared in was impermissibly suggestive because he was the only bearded and balding man in the lineup. Defendant further asserted that he was the only man of slight build and one of only three men with a light skin complexion. After a suppression hearing held on the morning of trial, the Court denied defendant's motion and found that the lineup procedure complained of was not impermissibly suggestive. The reasons for the Court's ruling now follow.

On May 6, 1992, defendant entered the Independence Federal Savings Bank and accosted the teller station of Ms. Krista Hansen. Defendant passed Ms. Hansen a note, which demanded, "I have a gun! . . . You have 30 sec. to give me all of the money in your draw [sic]." While Ms. Hansen complied with the note, another teller, Jeffrey Scott, observed the progress of the robbery. In Mr. Scott's estimation, the robbery lasted for at least one minute, during which time Mr. Scott "studied" defendant's profile. Mr. Scott described defendant as approximately 5'9" in height, 160 pounds or slim torso, and as being unshaven or having a light beard. Defendant wore a black baseball cap, a black "puffy" leather jacket, green loose-fitting pants and tennis shoes. Once defendant had completed the robbery of Ms. Hansen's teller station, he fled from the bank on foot.

On May 26, 1992, as he was returning from lunch, Mr. Scott spotted defendant and a confederate walking on Connecticut Avenue in the direction of the bank. Mr. Scott immediately recognized defendant as the man who had robbed the bank on May 6th. He returned to the bank and warned one of his colleagues, Elizabeth Dixon, that he feared another "hit," and suggested that she "pack down" and move some of her larger cash bills from her top cash drawer to a lower drawer. Soon thereafter, defendant and his accomplice entered the bank. While his accomplice controlled the lobby area by brandishing a pistol, defendant approached the teller station of Ms. Elizabeth Dixon and announced that he was committing a robbery. Defendant

then robbed Ms. Dixon. Mr. Scott observed the robbery of Ms. Dixon from his teller station. Mr. Scott recognized defendant as the same man who had robbed the bank on May 6th, and as the same man whom he had seen only minutes before on the street. Once defendant completed his robbery of Ms. Dixon, he moved to Mr. Scott's teller station and robbed Mr. Scott. Defendant and his accomplice then fled from the bank on foot.

Jeffrey Scott observed the robbery for three to four minutes. According to Mr. Scott, defendant's beard looked somewhat fuller than it had on May 6th and his eyes appeared "blood shot." Defendant wore "ragged" blue jeans, a yellow jacket with black trim and a baseball cap.

On June 9, 1992, victims and witnesses of the two robberies attended a police department lineup in which defendant and eight others appeared as suspects. Defendant was the only participant in the lineup who had a beard. However, almost all of the participants had moustaches. Also, although defendant was the only man who was balding, all of the participants wore baseball caps during the identification procedure.

Five witnesses viewed the lineup. Three of the witnesses, including Ms. Hansen, the victim of the first robbery, did not identify any of the participants as the perpetrator. Ms. Tracie Wood, who had been stationed at the bank's reception desk facing away from the teller stations at the time of both of the robberies, identified someone other than defendant as the perpetrator. Mr. Scott positively identified defendant as the man who had committed both offenses.

## DISCUSSION

■ The admissibility of lineup identification testimony is governed by a two-step inquiry. First, defendant bears the burden of proving that the identification procedure which he challenges was so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *Neil v. Big-*

*gers,* 409 U.S. 188, 196–98, 93 S.Ct. 375, 380–81, 34 L.Ed.2d 401 (1972). If the court finds that the identification procedure was suggestive, it must then determine whether the identification made by the witness is nonetheless reliable. *Manson v. Braithwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Reliability, of course, "is the linchpin in determining the admissibility of identification testimony...." *Id.*

■ In the case under consideration, the Court is convinced that the lineup which has been challenged by defendant was not impermissibly suggestive. Although defendant was the only participant in the lineup who was balding or suffering from hair loss, all of the participants wore baseball caps during the identification procedure, and the caps were pulled down towards their eyes. Thus, defendant's hair loss could not have highlighted him and contributed to a misidentification. Similarly, defendant's slim torso and his light skin complexion could not have suggested him to the witnesses. The Court's review of the photograph of the lineup (Government's Exhibit 25) reveals that at least two of the other participants can be described as slight or thin,[1] and only two of the participants were heavy-set. The remaining four participants were average build. As far as his skin tone is concerned, three and possibly four of the other participants shared defendant's light skin complexion, and the remaining participants had medium complexions. None of the others appears to have been darkskinned. In summary, since other lineup participants shared defendant's skin complexion and body type, these features were insufficient bases for the Court to suppress Mr. Scott's identification testimony.

■ That defendant was the only participant with a beard is somewhat more problematic. The Court is convinced, however, that any suggestivity which might have been created by defendant's beard was ne-

---

1. Even if defendant were the only lineup participant of slighter build, this fact would not have been enough to require suppression of the line-up identification evidence. *United States v. Porter,* 430 F.Supp. 208, 212 (W.D.N.Y.1977).

gated by the fact that almost every other participant had a moustache. Moreover, the Court is mindful of the edict that a single, unique physical trait is, in the main, an insufficient basis for a finding of suggestivity. *See, e.g., United States v. Jackson,* 509 F.2d 499, 505 (D.C.Cir.1974) (lineup not impermissibly suggestive where the defendant was the only participant with a "bush" hairstyle); *Williams v. Weldon,* 826 F.2d 1018, 1021 (11th Cir.1987) (photo array not impermissibly suggestive where the defendant was the only black in the array because other participants had roughly the same characteristics and features), *cert. denied,* 485 U.S. 964, 108 S.Ct. 1231, 99 L.Ed.2d 431 (1988); *Kubat v. Thieret,* 867 F.2d 351, 358 (7th Cir.) (photo array not impermissibly suggestive where the defendant was the only suspect who wore glasses and witness had described the perpetrator as wearing glasses), *cert. denied,* 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989). Put another way, "the disparate physical appearances of the lineup participants is not alone sufficient to warrant a finding of suggestiveness." *Swicegood v. Alabama,* 577 F.2d 1322, 1327 (5th Cir.1978).

█ This is especially true where, as here, question has been raised whether the defendant even possessed the allegedly distinguishing physical characteristic at the time of the commission of the offense.[2] In *United States v. Porter,* 430 F.Supp. 208, 211–12 (W.D.N.Y.1977), the defendant was the only participant in the lineup with a beard; however, he did not have a full beard at the time of his arrest. Faced with facts almost indistinguishable from those in this case, the district court averred,

> the fact that the defendant was the only one in the lineup with facial hair other than a mustache does not render the identification procedure impermissibly suggestive since [the identifying witness'] only past associations with defendant were [at a time when] defendant was clean shaven....

*Id.* at 212. Because the identifying witness, Mr. Scott, encountered defendant at a time when he was merely unshaven and later when he had only light beard growth, it cannot be said that defendant's facial hair rendered the lineup impermissibly suggestive.

The best evidence of the non-suggestivity of the lineup in this case, however, was the fact that, of the five witnesses who viewed the lineup, only Mr. Scott positively identified defendant. If, as defendant contended, the lineup was impermissibly suggestive, then presumably all of the witnesses would have selected defendant. Instead, three of the witnesses failed to make an identification and one of the witnesses selected another person. This leads the Court to conclude that defendant was by no means flagged or highlighted by his beard, lean torso or light complexion, and that the lineup was not impermissibly suggestive.

█ Because the Court has found no suggestivity, it is not necessary to delve, extensively, into the question whether Mr. Scott's identification was reliable. Under the factors set forth in *Manson v. Braithwaite,* 432 U.S. at 114, 97 S.Ct. at 2253, however, there can be no dispute that Mr. Scott's identification was entirely reliable. Mr. Scott's opportunity to view the robber was excellent. During the May 6th robbery, he had a clear view of defendant for at least one minute in a well-lighted surrounding. Three weeks later Mr. Scott second-sighted defendant on the street, and he immediately recognized him as the same man who had robbed the bank on May 6th. Shortly thereafter, Mr. Scott observed defendant for three to four minutes while defendant robbed one of his colleagues at the adjoining teller station, and then at point-blank range while his own teller station was robbed. There is no suggestion that Mr. Scott's attention was less than complete during these incidents. To the contrary, he testified that he "studied" defendant's profile during the first robbery, and that he knew exactly who defendant

2. Defendant was described as unshaven at the time of the first robbery and as having a light beard at the time of the second robbery. It is clear that defendant had a relatively full beard by the time of the lineup.

was during the second robbery. Furthermore, Mr. Scott provided an accurate description of defendant, he was certain of his identification (he identified defendant quickly and without hesitation), and only one month had passed between the first robbery and the lineup and less time between the second robbery and the lineup. In light of all of these factors, Mr. Scott's identification was nothing short of completely reliable.

For the foregoing reasons, the Court has ruled that the lineup in which defendant appeared was not impermissibly suggestive. Moreover, the Court now finds that Mr. Scott's identification was reliable, and the motion to suppress is denied.

SO ORDERED.