**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 95-5467

DELMAR WALTON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 95-5468

MARK WATKINS,
Defendant-Appellant.

Appeals from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-94-50066)

Argued: March 8, 1996

Decided: June 4, 1996

Before HAMILTON and WILLIAMS, Circuit Judges, and
WILLIAMS, Senior United States District Judge for the Eastern
District of Virginia, sitting by designation.

_____

Affirmed in part and remanded with instructions by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** John J. Pizzuti, CAMILLETTI, SACCO & PIZZUTI, Wheeling, West Virginia, for Appellant Walton; Donald James Tennant, Jr., CASSIDY, MYERS, COGAN, VOEGELIN & TENNANT, L.C., Wheeling, West Virginia, for Appellant Watkins. Robert H. McWilliams, Jr., Assistant United States Attorney, Wheeling, West Virginia, for Appellee. **ON BRIEF:** Jay T. McCamic, MCCAMIC & MCCAMIC, Wheeling, West Virginia, for Appellant Walton; William Cipriani, CIPRIANI & PAULL, L.C., Wellsburg, West Virginia, for Appellant Watkins. William D. Wilmoth, United States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I.

On February 17, 1995, Mark Watkins was convicted of five counts, and Delmar Walton was convicted of four counts, of a six-count indictment arising out of the murder of Debbie Pugh. The defendants were engaged in a drug conspiracy ring, and killed Pugh to prevent her from informing law enforcement officials about their activities. The defendants have now lodged this appeal of their convictions, citing the following grounds:

I. The pretrial photographic array should have been suppressed.

II. The defendants' expert on photographic arrays should have been permitted to testify.

III. The police officer who conducted the photographic array was permitted to testify as an expert, despite the fact that no expert opinions were disclosed pursuant to Fed. R. Crim. P. 16(e).

2

IV. The defendants should have been allowed to introduce the possible sentencing ranges for their co-conspirator.

V. The indictment should have been dismissed because the government abused its subpoena power and failed to preserve exculpatory evidence.

VI. A mistrial should have been granted when the government made certain improper comments.

VII. The indictment should have been dismissed because of grand jury scripting.

VIII. Debbie Heiney should not have been allowed to testify because of the marital communications privilege.

IX. The government should have been required to elect between Counts Four and Five due to multiplicity.

X. The government should not have been allowed to bolster the testimony of a witness by using a provision in the plea agreement that the witness was to be truthful.

XI. The trials should have been severed.

XII. The evidence did not support the conviction.

XIII. Evidence that the defendants passed a polygraph test should have been admitted.

Finding only that the ninth ground of appeal has any merit, we affirm on all the other grounds, and remand this case to the District Court with instructions to vacate the defendants' convictions and sentences on Count Five.

II.

The first ground of appeal raised by the defendants is that the photographic array identification of them was flawed. Two witnesses

3

were shown a photographic array containing six individuals, none of whom were the defendants or their co-conspirator. Four and a half years later, they were shown another array of six photographs, three of which were pictures of the defendants and their co-conspirator. The defendants first contend that the second array did not contain a sufficient number of photographs. They argue that because 50% of the array consisted of suspects, that the likelihood the women would pick out the defendants was artificially inflated. This argument has no merit. The women had rejected all the photographs in the previous array, which contained no photographs of the defendants or their co-conspirators, and they were free to do the same with the second array. Furthermore, arrays where half of the photographs are of suspects have been previously upheld by this Court. See Williams v. McKenzie, 576 F.2d 566, 571-72 (4th Cir. 1978); United States v. Cunningham, 423 F.2d 1269, 1271-73 (4th Cir. 1970).

The defendants further complain that the photographs in the array were not sufficiently similar. Nothing requires that the photographs be nearly identical; all the law mandates is that the array not be suggestive. The photographs in the array were sufficiently close to the descriptions given by the women such that the array was not suggestive; nothing about the array leads to the conclusion that the women would have inevitably chosen the defendants.

In addition, the defendants complain about the fact that the women were shown the array together, and in a truck in a hospital parking lot rather than at the police station. Yet the record clearly shows that only in regard to defendant Walton was there a joint viewing. One woman picked out the co-conspirator, while the second was still entering the truck, having been impeded by the doorknob. The second woman then picked out the co-conspirator independently. Both women then pointed at defendant Walton at the same time, and then the first woman also picked out defendant Watkins. The first woman then attempted to jog the second woman's memory as to defendant Watkins, but the second woman said that she had never seen his face, and therefore could not pick him out. Again, the showing of a photographic array to two witnesses at the same time is not per se impermissible; the standard is again whether the array was suggestive. See Tavarez v. LeFevre, 649 F. Supp. 526 (S.D.N.Y. 1986). The foregoing sequence of events demonstrates that despite the joint viewing,

4

the witnesses made independent identifications, and did not influence one another. As for holding the viewing in a truck in a hospital parking lot, that was done for the convenience of the witnesses; one of them was taking her son to an appointment. Nothing about the array suggests that the women were rushed in their identifications.

As for defendant Walton's attack upon his in-court identification by one of the women, his contentions are without foundation and are consequently without merit.

III.

The defendants' second ground of appeal relates to the exclusion of the testimony of their supposed "expert." The admission of all evidence in the federal system is subject to a test of probativeness. See Fed. R. Ev. 402. The curriculum vitae of this expert casts doubts upon his expertise, given his supposed mastery of approximately fourteen separate areas. Furthermore, the content of the expert's testimony demonstrates that it would have confused and mislead the jury. The expert proposed to testify that one of the women unconsciously transferred the mustache from the laundromat cleaning man to the people in the array. Yet the cleaning man testified that when he left the laundromat, only the victim was present. It is an abecedarian principle of evidence law that the opinion of the expert must fit the facts. This expert's opinion did not, and the District Court properly excluded it.

IV.

The third ground of appeal raised by the defendants is that the police officer who conducted the photographic array was allowed to testify as an expert without disclosing his expert opinions pursuant to Fed. R. Crim. P. 16(e). The record in the case clearly demonstrates that the police officer was not testifying as an expert in photographic arrays, but was instead a fact witness offering permissible opinion testimony under Fed. R. Ev. 701. Consequently, no error occurred.

V.

The defendants' fourth ground of appeal relates to the refusal of the District Court to allow the introduction of testimony concerning the

5

possible sentencing guideline range for Millward in order to impeach his credibility. Yet Millward testified that he thought that he was going to receive ten years, and the jury was informed that he could get less. The defense was able to call one of Millward's attorneys; the District Court merely precluded the testimony of his other attorney. Such testimony would have been cumulative, and was properly excluded. See Fed. R. Ev. 403.

VI.

The defendants next argue that the indictment against them should have been dismissed because the government failed to preserve exculpatory evidence and abused its subpoena power. The government denies that it ever received the evidence, and questions its exculpatory nature. Even if the government did receive the evidence in question, the defendants have shown nothing more than that the government was negligent in its handling of it. In order to prevail on a claim of a due process violation, the defendants must show bad faith. See Huldren v. Legursky, 16 F.3d 57 (4th Cir.), cert. denied, 115 S. Ct. 106 (1994). This they have not done.

Nor did the government abuse its subpoena power. The investigator who served subpoenas on the trial witnesses asked if they desired a pretrial interview. If they said yes, he wrote the date and time of the interview on the subpoena he was serving. While this practice is not to be encouraged, it does not convert the subpoena to appear at trial into a subpoena to appear at a pretrial interview, and therefore the government did not abuse its subpoena power.

VII.

The defendants' ninth ground of appeal, and the only one with merit, is that the District Court erred when it failed to order the government to elect between Counts Four and Five in the indictment due to multiplicity. Count Four charged the defendants with conspiracy to kill an informant in violation of 18 U.S.C. § 371. As this Count constitutes the conspiracy to commit the offense charged in Count Two, however, the elements of the conspiracy which must be proved are set forth 18 U.S.C. § 1512(a). Count Five charged the defendants with conspiracy to violate the civil rights of the victim in violation of 18

6

U.S.C. § 241. The defendants argue that the essential elements of these counts are identical. To prove the elements of Count Four, the government must show that the defendants engaged in a conspiracy to kill the victim with the intent to prevent her from communicating to a law enforcement officer of the United States information related to the commission of federal crimes. To prove the elements of Count Five, the government must show that the defendants conspired to injure, threaten, and intimidate the victim in the exercise of rights guaranteed her under the Constitution to provide information concerning federal offenses. Murdering the victim is one method of injuring, threatening, and intimidating. The government argues that the elements of these two offenses have one difference: in Count Four, the government must show that the victim intended to inform a federal law enforcement officer, while in Count Five, all the government must show is that the victim intended to inform some law enforcement officer, whether state or federal.

This is too small a peg upon which for the government to hang its hat. The Double Jeopardy Clause of the Constitution prohibits cumulative punishments for the same offense. In Blockburger v. United States, 284 U.S. 299 (1932), the Supreme Court held that where the same act violates two separate statutory provisions, the test to determine whether or not the act constitutes two separate offenses is whether each statute requires proof of an additional fact which the other does not. Such is not the case here. While Count Four requires proof that the victim intended to go to a federal law enforcement officer, Count Five only requires proof that the victim intended to go to some law enforcement officer. As the government stated in its brief, one can easily conceive of facts which, if proved, would constitute a violation of Count Five, but not Count Four. One cannot, however, conceive of facts which, if proved, would constitute a violation of Count Four, but not Count Five. Blockburger requires that both statutes require proof of an additional fact which the other does not. Here only one statute requires proof of an additional fact; therefore, the defendants, who received concurrent life terms on both Count Four and Count Five, were subject to multiple punishments for the same offense. The District Court erred when it failed to order the government to elect between the counts. Therefore, we remand the case to the District Court on this ground of appeal, with instructions to vacate the defendants' convictions and sentences on Count Five. Because the

7

defendants received concurrent life terms on Counts Four and Five, resentencing is not necessary.

VIII.

Of the remaining grounds of appeal raised by the defendants in their briefs, none was argued at oral argument. Upon consideration of the briefs, none of these grounds has any merit. Some further comment is warranted upon the defendants' eighth ground of appeal, namely, that the District Court erred when it denied defendant Watkins' invocation of the marital communication privilege with regard to his former wife, Debbie Heiney. The government correctly notes that Watkins was a bigamist, and that his second marriage, to Cindy Hadley, evidences an intent to permanently abandon his first marriage, such that the marital communication privilege does not apply. See In re Witness Before Grand Jury, 791 F.2d 234, 238-39 (2d Cir. 1986); United States v. Porter, 986 F.2d 1014, 1018-19 (6th Cir.), cert. denied, 114 S. Ct. 347 (1993); United States v. Fulk, 816 F.2d 1202, 1205 (7th Cir. 1987); United States v. Byrd, 750 F.2d 585, 593 (7th Cir. 1984); United States v. Frank, 869 F.2d 1177, 1179 (8th Cir.), cert. denied, 493 U.S. 839 (1989); United States v. Jackson, 939 F.2d 625, 627 (8th Cir. 1991); United States v. Roberson, 859 F.2d 1376, 1281 (9th Cir. 1988). However, Hadley also testified at the trial as to communications between her and Watkins when they were married. Normally, that would not raise an issue concerning the marital communications privilege, because in most states, bigamous marriages are void ab initio. In West Virginia, however, bigamous marriages are merely voidable. See W. Va. Code§ 48-2-2(a)(1). Authority exists for the proposition that, as is the case for marriages ending in divorce, communications made during a voidable marriage subsequently annulled remain subject to the privilege beyond the termination of the marriage. See People v. Dorsey , 120 Cal. Rptr. 508, 514-15 (Cal. Ct. App. 1975); People v. Mabry, 455 P.2d 759, 763-64 (Cal. 1969), cert. denied, 406 U.S. 972 (1972).

This interesting question need not be resolved today because defendant Watkins did not object to Hadley's testimony at trial, and did not raise it as a ground of appeal. Thus Watkins has abandoned this issue. See Tucker v. Waddell, No. 95-2080, 1996 WL 265795, at *5 n.1 (4th

Cir. May 20, 1996) (finding an issue not addressed in the party's brief or at oral argument abandoned).

IX.

For the foregoing reasons, the defendants' convictions are affirmed, except for their convictions on Count Five. The case is remanded to the District Court, with instructions to vacate the defendants' convictions and sentences on that count.

<u>AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS</u>

9